

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-26-2008

# USA v. Leveto

Precedential or Non-Precedential: Precedential

Docket No. 05-4753

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Leveto" (2008). *2008 Decisions.* Paper 571.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/571

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-4753
_____

UNITED STATES OF AMERICA

v.

DANIEL J. LEVETO,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania

(D.C. No. 01-cr-00006)
District Judge:  The Honorable Maurice B. Cohill, Jr.

_____

ARGUED NOVEMBER 1, 2007

BEFORE: RENDELL, WEIS,
and NYGAARD, <u>Circuit</u> <u>Judges</u>.

(Filed :  August 26, 2008 )
_____

Victoria B. Eiger, Esq.(Argued)
Dershowitz, Eiger & Adelson, P.C.
220 Fifth Avenue, Suite 300
New York, NY 10001
          Counsel for Appellant


John Hinton, III, Esq. (Argued)
Alan Hechtkopf, Esq.
United States Department of Justice Tax Division
P. O. Box 502
Washington, DC 20044
          Counsel for Appellee


_____

OPINION OF THE COURT
_____


NYGAARD, Circuit Judge.

Daniel Leveto appeals the District Court's judgment of conviction for federal income tax fraud following a jury trial. He asserts a violation of his Sixth Amendment right to counsel, and he has made numerous challenges to evidentiary decisions made by the District Court.  For the reasons that follow, we will affirm the judgment of the District Court.

I.

Leveto operated a veterinary hospital in Meadville, Pennsylvania. Internal Revenue Service auditors detected fraud on Leveto's returns and they referred the matter to the I.R.S. Criminal Investigation Division. The I.R.S. initiated an undercover investigation that began in December of 1994. They obtained a mail cover, performed a public records check, conducted surveillance, and tasked an I.R.S. special agent to work undercover. The record provides the following facts.

Leveto joined an organization known as First American Research in the 1980's. The group promoted the establishment of sham offshore trusts for the purpose of evading liability for federal income taxes. Leveto became a promoter of a book authored by the founder of the organization, entitled "Tax Free: How the Super Rich Do It." He advertised the book in newspapers, listing his address for those who wished to make further inquiries. He received hundreds of responses.

In accord with the scheme promoted by the organization, Leveto "sold" his veterinary business to Center Company, a sham foreign trust purportedly located in the Turks and Caicos Islands. Center Company then distributed all of the veterinary clinic income to another sham foreign trust. This created an illusion that the veterinary clinic profits were distributed as foreign source income to foreign beneficiaries, eliminating federal income tax liability. Leveto and his wife then used debit cards and other means to spend or repatriate the funds, obscuring their control and ownership of these monies. In all,

3

Leveto left $408,000 in unpaid taxes between 1991 through 2000.

Leveto promoted and sold the organization's book to a confidential informant and to the undercover agent. Leveto also admitted to these people that he was involved in nothing more than a "charade or sham." He admitted that he actually retained control of all of the gross receipts of the veterinary business, and that he paid only as much tax as he wanted to pay. Finally, he told both individuals where he kept a number of documents relating to the scam.

The I.R.S. undercover agent prepared a 27 page affidavit explaining Leveto's tax evasion scheme. The affidavit accompanied the application for a search warrant, but it was not incorporated into the application. The search warrant application did have a general list of items of interest attached as an exhibit. The agent accompanied a United States attorney who presented the request for a search warrant to the Magistrate Judge. The Magistrate Judge sealed the affidavit to protect the identity of confidential sources and authorized a search warrant for Leveto's residence and business. The undercover agent briefed other I.R.S. agents on the warrant and on the contents of the affidavit. They conducted the search the next day.

## II.

On February 15, 2001, a Grand Jury returned an indictment against Leveto and others, and an arrest warrant was issued on December 15, 2001. Leveto fled, evading arrest until March of 2004.

After Leveto's return to the Western District of Pennsylvania, the Magistrate Judge appointed counsel for him and ordered him to be detained. The District Court subsequently granted appointed counsel's motion to withdraw due to a conflict of interest. At that point, Leveto expressed an interest in *pro se* representation, but paradoxically indicated to the District Court "I am in no way waiving my right to counsel."

On June 7, 2004, the District Court conducted a hearing to determine Leveto's intent with regard to representation.[1] At the hearing, the District Court instructed Leveto that he could not "have one foot in the counsel boat and one foot in the *pro se* boat." Moreover, the District Court noted that it would interpret any equivocation on the issue of representation by Leveto as a request for counsel. Leveto was given an opportunity to confer with stand-by counsel at this hearing.

After consulting counsel, Leveto said: "I have decided to proceed *pro se* with [the attorney] as stand-by counsel." The District Court then began a colloquy with Leveto, confirming that: he understood the charges against him and the elements of each offense; he was aware of the maximum penalty for each charge; he was cognizant that rules of evidence and rules of criminal procedure govern the process for trying the case and the

---

[1] The District Court attempted to conduct a hearing one week earlier, but continued the proceeding upon discovering that legal counsel for Leveto was not present. The first hearing was conducted by Judge Maurice Cohill. The second hearing was conducted by Judge Sean McLaughlin.

5

admission of evidence; and that he was aware that the judge could not advise him on the rules.

The District Court found Leveto competent to waive counsel, but advised: ". . . in my opinion, Mr. Leveto, a trained lawyer would defend you far better. . . than you could defend yourself. In my opinion it is extremely unwise of you to try to represent yourself. . . ." The District Court concluded: "I strongly urge you to proceed with counsel, but it is your constitutional right to a knowingly [sic] and voluntary waiver of counsel." At the end of this colloquy the District Court asked: ". . . do you still desire to represent yourself and give up your right to be represented by a lawyer." Leveto responded: "I do, your Honor." The District Court acknowledged his waiver and appointed the attorney as stand-by counsel.

Leveto aggressively pursued his defense, filing numerous motions, including: motions for clarification; motions to dismiss parts of or all of the charges; a motion to disclose evidence; and a motion to suppress evidence based upon an invalid search warrant. Leveto also appealed his detention order. Finally, Leveto undertook plea negotiations with the government.

The District Court notified the parties on April 27, 2005 that trial would commence on May 23, 2005. One week before trial was to begin, Leveto filed a 42 U.S.C. §1983 action against Judge Cohill, the presiding judge, alleging bias in the handling of pre-trial motions.

6

On the evening before trial, Leveto mailed from jail a motion to recuse Judge Cohill, on the ground that the Judge was now a defendant in a lawsuit filed by Leveto. At the morning conference before jury selection, the District Court orally denied the motion, stating that such a maneuver would "open the door for any defendant any time to file an action against the Judge personally and then get him to recuse . . . ." Upon this denial, Leveto next expressed his desire to have a separate hearing on the matter, before a different judge. The District Court denied this request, declaring that jury selection would commence as scheduled. At that point, Leveto stated: "I can't take part in a mock trial. This motion that was filed with the Court deserves more of a discussion than just a denial."

Moments later, as jury selection was about to commence, Leveto said at side-bar: "After some new issues had come up, I had additional due process concerns and I am asking to be represented by counsel." The District Court reminded him that counsel had been appointed early in the process, but that "you didn't want to take advantage of it." The following exchange then occurred:

> Leveto: Well, due to some of the newer developments, Your Honor, I believe that I no longer feel comfortable *pro se* and I do need to be represented by an attorney.
>
> Judge: Well, this is a bit late to be asking that, so the motion is denied.

7

During *voir dire* proceedings, Leveto repeatedly expressed his desire for an attorney. In each instance, the District Court denied the request and advised Leveto to consult with stand-by counsel, who was present throughout all of this time.

As the trial began, the District Court asked Leveto if he wanted to make an opening statement. He said:

> You know, Your Honor, due to the sheer intimidation of all of this - - I really believed that I could represent myself, but I seem to be having difficulties and mental blocks, and I am asking you again to have an attorney represent me."

At the close of the government's case, Leveto asked to make an opening statement. The District Court granted the request, but cautioned "There will be no more talk about not having a lawyer. You waived that clearly in June of 2004." A discussion between Leveto and the District Court ensued.

Judge: Under the circumstances of this case, I can't imagine stopping now and appointing [the stand-by counsel] or anyone else to represent you and prepare to defend a case like this. You can't do it. You can't operate that way.

Leveto: I'm aware of that, Your Honor. That is, [sic] why before we started, I reasserted the right and I filed the action against you a week before the trial.

8

Finally, later in the trial the following exchange occurred at side-bar after Leveto raised the counsel issue again:

Leveto:  I just was not aware that you couldn't relinquish [a waiver of the right to counsel]. I know that I did it. I am sure that everyone knows that I did it here.

Judge:  But, you can't relinquish it the day of the trial. This has been pending for years and no lawyer could possibly go in and act as a lawyer the day of the trial in a case like this without preparation time. And in the interest of justice, the thing has to move along.[2]

---

[2] The government points to the fact that the case was tried in Erie, Pennsylvania, but the Judge lived in Pittsburgh, Pennsylvania and stand-by counsel lived in Butler, Pennsylvania. Further, the government's attorneys and witnesses traveled from Washington, D.C. and other distant locations. Finally, the *venire* had been assembled from a geographic area that is roughly equivalent to one-quarter of the Commonwealth of Pennsylvania. We take judicial notice of the fact that both Pittsburgh and Butler are over 100 miles from the Erie federal courthouse, and that Washington, D.C. is approximately 370 miles away from the Erie federal courthouse.

9

The counsel issue did not arise in the remainder of the trial. On June 2, 2005, a jury reached a verdict of guilty on the three counts brought against Leveto. The District Court entered a judgment of conviction and sentence on October 14, 2005. Leveto appeals this judgment.

III.

A.

Leveto claims that his Sixth Amendment rights were violated when the court denied his request for counsel.[3] Our examination of the record leaves no doubt that Leveto properly made a conscious and informed choice to waive his Sixth Amendment right to counsel and to proceed *pro se*. *United States v. Welty,* 674 F.2d 185, 188-89 (3d Cir. 1982); *Farreta v. California*, 95 S.Ct. 2525, 2541 (1975). Nonetheless, Leveto argues that, in spite of the waiver, we and the District Court are obligated to give his request for counsel deference of the highest order. *See e.g. United States v. Proctor*, 166 F.3d 396, 403 (1st Cir. 1999); *United States v. Pollani*, 146 F.3d 269, 273 (5th Cir. 1998). We do not find any authority to support Leveto's position.

In *Proctor*, the court reversed the district court's denial of a defendant's post-waiver request for counsel, stating categorically that it is "hard to imagine an explanation for denial [of a request by a *pro se* defendant for legal counsel] that

_____

[3] Our jurisdiction over the final judgment of conviction is found in 28 U.S.C. §1291.

10

would withstand scrutiny." Yet, the defendant in *Proctor* made his request at a motions hearing one month before the start of trial. Further, the court stated in *dicta* that the "last minute timing" of a request could provide a basis for the denial of a request that would pass constitutional scrutiny. *Proctor*, 166 F.3d at 403.

In *Pollani*, the defendant requested counsel only four days before trial. Reversing the district court's denial of the request, the Court of Appeals of the Fifth Circuit reasoned "[the attorney] could have presented a better defense with three days of preparation than could Pollani with three months." *Pollani*, 146 F.3d at 273. Importantly, however, the Court of Appeals upheld the district court's denial of the continuance that first accompanied Pollani's request for counsel. It reversed the district court's decision regarding counsel mindful of the fact that Pollani had renewed his motion for counsel after explicitly stating that he no longer sought a continuance. *Id.* Delay, therefore, was not a proper basis for the denial of his motion.

In both cases, as with all of the cases cited by Leveto, the factual contexts of the requests for counsel are significantly distinguished from the present case.[4] None of the cases cited by Leveto, nor any other precedent we could find, supports

---

[4] We also note that, in *Pollani*, the court's comments regarding the ability of counsel to represent the defendant with very little preparation time is, necessarily, relevant only to the criminal case at issue.

Leveto's extreme position that a defendant's post-waiver request for counsel is to be given virtually unqualified deference.

To the contrary we find wide agreement that, once waived, the Sixth Amendment right to counsel is no longer absolute. *See e.g. United States v. Solina*, 733 F.2d 1208, 1211-12 (7th Cir.), *cert. denied,*, 469 U.S. 1039 (1984); *Menefield v. Borg,* 881 F.2d 696, 700 (9th Cir. 1989); *Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982); *United States v. Merchant,* 992 F.2d 1091, 1095 (10th Cir. 1993); *United States v. West,* 877 F.2d 281, 286 (4th Cir. 1989). We reaffirm that questions arising from a defendant's Sixth Amendment absolute right to professional legal counsel receive plenary review. *See e.g. United States v. Goldberg,* 67 F.3d 1092, 1098 (3d Cir. 1995). Yet, once the right has been properly waived, as is the case here, we are persuaded by the broad consensus of other courts that the consideration of a defendant's post-waiver request for counsel is well within the discretion of the district court. *See See e.g. Solina*, 733 F.2d at 1211-12; *Menefield* 881 F.2d at 700; *Merchant,* 992 F.2d 1095, n. 6; *West,* 877 F.2d at 286.

Moreover, while we have a strong interest in safeguarding a defendant's access to professional legal representation (*see Martinez v. Court of Appeal,* 528 U.S. 152, 161 (2000) ), other factors necessarily play an important role in a district court's deliberation of a post-waiver request for counsel. Certainly, evidence of a defendant's dilatory motive is properly considered as a basis for denial. Moreover, particularly as the trial date draws nearer, the district court can and should consider the practical concerns of managing its docket and the impact that a request may have on its general responsibilities for

12

the prudent administration of justice. *See West,* 877 F.2d at 286; *See also United States v. Criden,* 648 F.2d 814, 818 (3d Cir. 1981). The Court of Appeals of the Seventh Circuit aptly stated:

> A criminal defendant has a constitutional right to defend himself; and with rights come responsibilities. If at the last minute he gets cold feet and wants a lawyer to defend him he runs the risk that the judge will hold him to his original decision in order to avoid the disruption of the court's schedule that a continuance granted on the very day that trial is scheduled to begin is bound to cause.

*Solina*, 733 F.2d at 1211-12.

Indeed, a *pro se* defendant's knowing and voluntary assumption of such risks is at the heart of our requirement of a thorough colloquy to ensure that a defendant's waiver of the right to counsel is explicit, uncoerced and well-informed. *Welty,* 674 F.2d at 188-89; *United States v. Goldberg,* 67 F.3d 1092, 1098 (3d Cir. 1995). For all of these reasons, we will not find a Sixth Amendment violation in a trial court's denial of a defendant's post-waiver request for counsel unless the district court's good cause determination was clearly erroneous, or the

district court made no inquiry into the reason for the defendant's request. *See Goldberg*, 67 F.3d at 1098.[5]

In this case, Leveto argues that he should be granted a new trial because the District Court did not make any inquiry into his motion for counsel. Leveto also argues that the District Court denied his request on the basis of delay, and in doing so it erred. Further, Leveto maintains that the potential disruption to the proceedings caused by this last-minute request did not provide a sufficient basis for the court's denial of his motion. We agree that the District Court denied Leveto's request due to the timing of the motion and the likelihood for delay, but we disagree that the District Court's decision was error.[6]

---

[5] We agree with the Court of Appeals of the Ninth Circuit that a constitutional violation occurs where a trial court's denial of a request for counsel is based purely in a punitive notion. *Menefield v. Borg,* 881 F.2d 696, 700 (9th Cir. 1989) ("A trial court cannot insist that a defendant continue representing himself out of some punitive notion that the defendant, having made his bed, should be compelled to lie in it."). Moreover in certain circumstances "a rigid insistence on expedition in the face of a justifiable request for delay can amount to a constitutional violation." *United States v. Rankin,* 779 F.2d 956, 960 (3d Cir.1986). We do not find evidence of either concern in this case.

[6] The District Court failed to forthrightly state the rationale for its ruling on the record. Nonetheless, we find that

(continued...)

14

The significance of representation by professional legal counsel demands that any decision that touches upon the availability of counsel must be investigated and explained on the record. Yet, we do not insist upon a formal inquiry or colloquy where the rationales for the request and decision are clearly apparent on the record. *See United States v. Peppers,*302 F.3d 120, 133 n.12 (3d Cir. 2002). We find here that events just prior to Leveto's motion for counsel obviated the need for a formal

---

[6.](...continued)
the plain meaning of the court's multiple statements reveal the underlying reason, and we agree with Leveto that it was that the timing of the motion and resulting delay. In response to Leveto's first request, the District Court stated: "Well, this is a bit late to be asking that, so the motion is denied." In response to Leveto's renewed request at the close of the government's case the District Court said "Under the circumstances of this case, I can't imagine stopping now and appointing [the stand-by counsel] or anyone else to represent you and prepare to defend a case like this. You can't do it. You can't operate that way." Finally, when Leveto pressed the issue again a short time later, the District Court responded "But, you can't relinquish [your prior waiver of counsel] the day of the trial. This has been pending for years and no lawyer could possibly go in and act as a lawyer the day of the trial in a case like this without preparation time. And in the interest of justice, the thing has to move along." Leveto understood all of these comments to mean that the timing of his motion and the delay that would result grounded the District Court's decision to deny his motion. We agree.

15

inquiry about the underlying reasons for his request and the District Court's decision.

Immediately before Leveto's morning-of-trial request for counsel, the District Court considered his motion to recuse, mailed from prison the night before. Leveto argued that Judge Cohill had a conflict of interest because he was named as the defendant in Leveto's §1983 lawsuit, filed only one week earlier. The District Court ruled that this motion lacked merit, and it went further to characterize the motion to recuse as a thinly veiled tactic to manipulate the proceedings. Leveto asserted that his motion deserved a separate hearing by a different judge. Upon hearing that jury selection was going to commence, Leveto told the court that he refused to participate in what he characterized as "a mock trial."

Moments later, when the *venire* had been seated, Leveto requested counsel on the basis of "some of the new issues that had come up" and his "additional due process concerns." The District Court had already considered the substance of these "new issues" and "due process concerns" just minutes earlier and found them to be little more than last-minute machinations by the defendant. Moreover, later in the proceedings, Leveto explained to the District Court that he was overwhelmed by the task of representing himself. While Leveto's rationale appeared to have changed, there is no doubt that the reasons for his motion were fully expressed.

Generally, we would hold that a reasonable inquiry of a post-waiver motion for counsel is necessary both to ensure the integrity of trial proceedings and to aid our review. We find

here that a common sense reading of the entire record provides us with a clear understanding of Leveto's rationale for his motion. For this reason, we are satisfied that the District Court was fully aware of the substance of Leveto's motion for counsel, and we find that the District Court did not err by failing to engage in a formal colloquy specifically focused upon the underlying rationale for the motion for counsel.

Leveto next argues that the court improperly based its denial of his motion for counsel upon the issue of delay. We disagree. Leveto contends that the issue of delay should not have been considered by the District Court because he never requested a continuance of the trial. He also argues that stand-by counsel would have been able to assume his representation without delay. These arguments are meritless.

In considering a motion, the District Court is always charged with managing the cases on its docket with a vigilant concern for the efficient administration of justice. *See United States v. Mellon Bank, N. A.*, 545 F.2d 869, 873 (3d Cir. 1976). We cannot, as Leveto advocates, hamstring the discretion of the district court by limiting its consideration of delay to only those instances where a continuance is expressly requested. As a matter of law, a district court does not err by considering *sua sponte* the potential delay or disruption that would result from a change of counsel. Therefore, even if Leveto did not intend to request a continuance, the District Court did not err in considering the issue of delay in its decision on his post-waiver motion for counsel.

Moreover, given the timing of Leveto's motion, we would expect the District Court to factor delay issues into the decision on the motion, particularly in a case like this where the District Court was clearly familiar with the central issues and the parties of the case, and the scheduling complexities were obvious. We need not dig deep into the record to understand the District Court's immediate assessment that a day of trial motion for counsel would have necessitated delay, and that such a delay was onerous. After over one year of pre-trial proceedings, the trial judge was well aware of the intricacies of this tax case. The District Court was unquestionably competent to make its own assessment of the implications and feasibility of an immediate change in counsel at that point in the proceedings.

Also, as the judge was no doubt aware, the logistics of scheduling proceedings in this case were unusually complex. The trial judge was required to travel over 125 miles each way to reach the courthouse, while managing dockets in both Pittsburgh and Erie, Pennsylvania. Standby counsel also had a similar commute. Moreover, the government's attorneys traveled from Washington D.C., a journey of over 350 miles each way. Given that all of these people, with the *venire,* were in the courtroom at the time of the motion, and were prepared to commence trial on a heavily detailed tax fraud issue, we do not find any error in the District Court's assessment that Leveto's post-waiver motion for counsel would neccesitate a delay, and

that such a delay was onerous. Whether or not Leveto actually requested a delay is, therefore, irrelevant to our conclusion.[7]

We next turn to the issue of whether the timing of the request constitutes good cause to deny a post-waiver request for counsel. We agree with the Court of Appeals of the Seventh Circuit when it stated the following.

> Trial courts are thus faced with a dilemma. On one hand, a trial judge is hard-pressed to deny the aid of counsel to a defendant who initially seeks to represent himself but later declares himself legally incompetent to proceed any further, and on the other hand, the last minute grant of a continuance can cause serious inconvenience to judge, jury, opposing counsel, witnesses, and other litigants. (internal quotations and citations omitted.)

*United States v. Tolliver*, 937 F.2d 1183, 1187 (7th Cir. 1991); Moreover, we agree that the last-minute timing of a motion is generally a proper factor in considering whether to grant the motion, particularly where, as is the case here, the timing of the motion is part and parcel with the consideration of whether disruption would result if the motion was granted. *See Solina*,

[7.]We stress that, as in the case before the Court of Appeals of the Fifth Circuit, our assessment of whether substantial evidence supports a finding that a delay would be necessary to accommodate a post-waiver request for counsel is fact-intensive. *See Pollani*, 146 F.3d 269, *supra.*

19

733 F.2d at 1211-12 ("We are inclined to defer to [the judge's] intuition [regarding defendant's intent to delay on the eve of trial], but in any event believe that the scheduling problems the continuances would have caused were in themselves sufficient ground for refusing to delay the trial."); *Proctor*, 166 F.3d at 403 (The "last minute timing" of a request could provide a basis for the denial of a request that would pass constitutional scrutiny.); *Pollani*, 146 F.3d at 273 (The district court would be justified in denying a continuance attached to a post-waiver request for counsel because the defendant waited too long to retain counsel.).

As we have already stated, the District Court was well-informed about the complexity of the case, and fully capable of judging the length of delay that would have been necessary for an attorney to properly assume the representation of Leveto at trial. Particularly given the distances traveled by the judge, stand-by counsel and the government's attorneys who all were present expecting trial to begin, the disturbance that would have resulted from a change of counsel at that point was obvious. Moreover, Leveto never gave any signal to the court that he was reconsidering the waiver of his right to counsel. Therefore, the court was unable to proactively minimize disturbance to all involved in the case. Finally, the case already had been pending for several years.

For all of these reasons we will find that the District Court did not violate the Sixth Amendment in denying Leveto's post-waiver request for counsel.[8]

## B.

Leveto next argued that he was due a new trial because evidence obtained by the search warrant was improperly admitted into evidence. His first assertion is that, under the terms of the Federal Rules of Criminal Procedure, the Code of Federal Regulations, and a Directive of the Tax Division of the United States Department of Justice, the I.R.S. agent lacked the

---

[8] We have held in a somewhat analogous case that a defendant's request to proceed *pro se* was properly regarded as untimely when it was made after "meaningful trial proceedings" have begun. *Pitts v. Redman,* 776 F.Supp. 907, 920-921 (D.C. Del.1991), *aff'd.* 970 F.2d 899 (3d Cir.), *cert. denied*, 506 U.S. 1003 (1992). Though this is often a useful distinction, in this instance we would be left to parse the precise moment when such proceedings have begun. That strikes us a useless exercise here because it ignores the reality faced by the judge in this particular instance. The "serious inconvenience to judge, jury, opposing counsel, witnesses, and other litigants" would have been identical whether the motion came moments before or moments after the court formally initiated the proceedings.

authority to apply for the search warrants at issue here. We do not find any merit in Leveto's argument.[9]

The District Court correctly concluded that the I.R.S. agent had authority to request a search warrant. I.R.S. agents are "federal law enforcement officers" because they are "engaged in enforcing criminal laws" and are "authorized by the Attorney General" to execute warrants under 28 C.F.R. 60.2(a) and 26 U.S.C. 7608(b)(2)(A).

Moreover, the District Court correctly found that Tax Division Directive No. 52 (asserted by Leveto as de-authorizing I.R.S. agents from applying for search warrants) does not provide any substantive right to Leveto to challenge the search warrants. *See United States v. Caceres*, 440 U.S. 741, 753 (1979). Leveto also failed to provide any evidence that the procedures outlined in the Directive were violated. We do not find that the District Court abused its discretion in denying Leveto's motion to suppress evidence on this basis.

C.

We also disagree with Leveto that the search warrant at issue in this case was a general warrant. A warrant is not general unless it can be said to "vest the executing officer with

_____

[9] We review the denial of a suppression motion for clear error as to the underlying facts, and exercises plenary review as to the legality of the denial in the light of properly found facts. *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006).

22

unbridled discretion to conduct an exploratory rummaging through [defendant's] papers in search of criminal evidence." *United States v. Christine*, 687 F.2d 749, 753 (3d Cir. 1982). Key to Leveto's argument is that the affidavit, which did state particulars, was not incorporated by reference on the warrants. The only attachment was a list of the type of documents to be seized which used generic terms.

The District Court correctly concluded that, to the extent that the warrant was "generic," it was merely overbroad. Such a defect can be cured by an affidavit that is more particularized than the warrant. *Doe v. Groody*, 361 F.3d 232, 240 (3d Cir. 2004) ("So long as the actual search is confined to the narrower scope of the affidavit, courts have sometimes allowed the unincorporated affidavit to 'cure' the warrant.") Moreover, barring all else, the good faith exception applies in this case. The agents conducting the search were aware that there was a search warrant, and they were briefed on both the search warrant and the affidavit. *United States v. Leon*, 468 U.S. 897, 919 (1984). For these reasons we find that the District Court did not err.

D.

Finally, Leveto claims that the I.R.S. agent acted in bad faith in seeking the issuance of an administrative summons. The I.R.S. may validly issue an administrative summons pursuant to 26 U.S.C. 7602, but would act in bad faith if it did so after making a decision to refer the matter for prosecution by the Department of Justice. *See Pickel v. United States*, 746 F.2d 176, 183-84 (3d Cir. 1984). The District Court correctly found that Leveto did little more than make bald assertions, failing to

23

meet his heavy burden of proving bad faith in the procurement of the summons. *See United States v. Jose,* 131 F.3d 1325, 1328 (9th Cir. 1997) (en banc) (citing *LaSalle*, 437 U.S. at 317).  We do not find error in the District Court's ruling.

E.

For all of these reasons, we will affirm the order of judgment and sentence of the District Court.

RENDELL, Circuit Judge, dissenting.

I respectfully dissent from the majority's view of this case because the trial judge forced the defendant to proceed to trial pro se in violation of his Sixth Amendment right to counsel purely because he had previously waived counsel. This was improper as a matter of law.

It is undisputed that Daniel Leveto knowingly and voluntarily waived his right to counsel on June 7, 2004, and that, at that time, a thorough colloquy was conducted. It is also undisputed that, as the majority notes, a defendant's Sixth Amendment right to have counsel, once waived, is not absolute. A defendant who has waived the right to counsel, however, ordinarily may reassert it at any time prior to trial. *See Menefield v. Borg*, 881 F.2d 696 (9th Cir. 1989) (noting that a defendant's decision to represent him- or herself is not "cast in stone").

Here, the defendant permissibly sought to reinvoke his right to counsel and withdraw his waiver prior to trial. The trial judge would not permit him to do so, and did not inquire as to his reasons for invoking counsel, or make the findings that we require in order to justify such a denial–namely that the request for counsel was an "apparent effort to delay or disrupt proceedings." *See United States v. Proctor* 166 F.3d 396, 402 (1st Cir. 1999); *United States v. Merchant*, 992 F.2d 1091, 1095 (10th Cir. 1993). Instead, he summarily denied Leveto's request for counsel because it was "a bit too late." App. 312. In so doing, the trial judge erred and violated Leveto's constitutionally protected right to counsel. I believe Leveto is entitled to a new trial and, therefore, dissent.

I.      **Standard of review and legal standard**

25

As an initial matter, the majority opinion reasons as if we were reviewing a district court's denial of a motion *to substitute counsel*, applying an abuse of discretion standard. However, our Court has made clear that "[w]e exercise plenary review over claims alleging denial of the Sixth Amendment right to counsel." *United States v. Goldberg*, 67 F.3d 1092, 1097 (3d Cir. 1995); *United States v. Leggett*, 162 F.3d 237, 249 (3d Cir. 1998).[10] Thus, our inquiry is to be more searching.

We are guided by the principle that "it is representation by counsel that is the standard, not the exception." *Martinez v. Court of Appeal*, 528 U.S. 152, 161 (2000); *see also Chapman v. California*, 386 U.S. 18, 23 & n.8 (1967) (clarifying that right to counsel is so fundamental to our adversarial system that its deprivation can never be held harmless); *Fischetti v. Johnson*, 384 F.3d 140, 147 (3d Cir. 2004) (noting that, as between the right to self-representation and the right to counsel, right to counsel "is the presumptive default position"). We must, therefore, be "reluctant to deny the practical fulfillment of the right–even once waived–absent a compelling reason that will survive constitutional scrutiny." *Menefield*, 881 F.2d at 700.

It is established that the denial of a request for counsel, following a waiver, is only proper "if a defendant seeks counsel in an apparent effort to delay or disrupt proceedings on the eve

---

[10] Other courts of appeals have occasionally employed an abuse of discretion standard. *See United States v. West*, 877 F.2d 281 (4th Cir. 1989) (equating substitution of counsel with a request to revoke waiver and using abuse of discretion standard); *United States v. Merchant*, 992 F.2d 1091 (10th Cir. 1993) (same).

of trial," *Proctor* 166 F.3d at 402, or "after meaningful trial proceedings have begun," *Merchant*, 992 F.2d at 1095. The majority opinion fails to employ this standard.[11]

## II. Leveto's Request for Counsel and his Sixth Amendment Right to Counsel

The record shows that the trial judge denied Leveto's request for counsel before trial proceedings had begun and without any indication that the request was an apparent effort to

---

[11.] The majority states that the standard to find a violation of the Sixth Amendment is that "the district court's good cause determination was clearly erroneous, or the district court made no inquiry into the reason for the defendant's request." It seems to have taken this standard from cases involving requests to *substitute counsel* where the defendant continues with unwanted counsel, such as *United States v. Goldberg* where we said,

> If the district court denies the request to substitute counsel *and the defendant decides to proceed with unwanted counsel*, we will not find a Sixth Amendment violation unless the district court's 'good cause' determination was clearly erroneous or the district court made no inquiry into the reason for the defendant's request to substitute counsel.

67 F.3d at 1097 (emphasis added). Notably, this standard only applies where the court denies the request for substitute counsel *and* the defendant proceeds with counsel. Here we are presented with a request to reinvoke the Sixth Amendment right to counsel where the denial forced the defendant to proceed without counsel.

27

delay or disrupt proceedings, or indeed that any delay would result at all.

      **A.**        **Before "meaningful trial proceedings" had begun**

Neither the government nor the majority contends that "meaningful trial proceedings" had begun. The majority casts this portion of the legal standard as a "useless exercise here" that would require us needlessly to "parse" the proceedings. It is clear, however, that Leveto attempted to reinvoke his right to counsel prior to trial and jury selection, before any trial proceedings, let alone "meaningful" ones. Leveto's case is therefore not like cases such as *United States v. Tolliver*, where the defendant did not request counsel until the trial was at its mid-point.[12] 937 F.2d 1183, 1188-89 (7th Cir. 1991); *see also Merchant*, 992 F.2d at 1095 (holding that where the defendant requested that his standby counsel take over the defense in the middle of the trial, while a witness was on the stand, and standby counsel requested a continuance, the trial court could

---

[12] Moreover, *Tolliver* suggests that when a defendant seeks to reinvoke the right to counsel, the proper course of action is to let stand-by counsel step in wherever possible, even in the middle of trial. In that case, mid-way through the trial, Tolliver requested new counsel. 937 F.2d at 1186. The court was inclined to let stand-by counsel step in immediately until the government argued that he should not be forced to represent Tolliver because Tolliver had filed an ethics complaint against him; the court then agreed to continue to look for new counsel. *Id.* at 1186.

properly deny the motion).  The timing of Leveto's request here does not support the denial of his request for counsel.

Therefore, the District Court could only deny Leveto's request for counsel if it was an "apparent effort to delay or disrupt proceedings on the eve of trial."

**B.** **"Apparent Effort to Delay or Disrupt Proceedings on the Eve of Trial"**

Although the majority's opinion could be read as deciding that Leveto's request for counsel was an apparent effort to delay proceedings, reaching this conclusion requires reading into the record some facts and considerations that simply are not there. The trial judge did not state that he was rejecting Leveto's request out of concern for delay, travel of attorneys, or any of the other reasons the majority opinion ascribes to his denial of the request. Instead, he never even considered the request, but seemed to hold that once counsel is waived, a defendant cannot change his mind.

The record shows only the trial judge's continued insistence that Leveto waived counsel before, had lost the opportunity to request counsel, and could not change his mind when the case was going to trial. In response to Leveto's request for counsel prior to trial, referring to standby counsel, the judge said, "*we appointed Mr. Misko counsel a long, long time ago*. You have been represented by counsel, but you didn't want to take advantage of it." App. 312 (emphasis added). When Leveto immediately renewed his request because, he said, "I believe that I no longer feel comfortable pro se and I do need to be represented by an attorney," *id.,* the judge replied, "[w]ell, *this is a bit late to be asking that, so the motion is denied*." *Id.* (emphasis added). At the beginning of trial, Leveto again said, "I really believed that I could represent myself, but I seem to be having difficulties and mental blocks, and I am asking you again to have an attorney represent me." App. 320. The judge again focused on the passage of time: "I've already ruled that you have had back-up counsel for some time and *it's a little late to be asking for more counsel now*." *Id.* (emphasis added). Mid-

30

way through trial, the judge demonstrated his misunderstanding of Leveto's right to reassert his right to counsel. After instructing Leveto that, "[t]here will be no more talk about not having a lawyer. You waived that clearly in June of 2004," App. 338, he added *"you can't relinquish it [the waiver of counsel] the day of trial."* App. 358 (emphasis added). There is no caselaw that supports the trial court's intransigence in the face of a defendant's assertion of the right to counsel.

There is no evidence of a purpose that would justify the court's refusal here–namely to delay or disrupt trial. While the trial court may have understandably viewed the request skeptically and not have been favorably inclined toward Leveto–who had sued him–nonetheless, a defendant's request not to be forced to proceed through a complex trial representing himself requires an objective assessment of the situation. From that perspective, Leveto's earlier decision that he did not need counsel was based on his view–shared by all, apparently, at the time–that the matter would proceed to a negotiated guilty plea. At the status conference on October 20, 2004, Leveto indicated that he would be announcing his intentions with regard to a possible plea after the suppression hearing scheduled for October 25th. He said, "it's been no secret, but evidently it's got to be official and on the record, I will not go to trial with this case." App. 231; App. 233 ("I can tell you unequivocally that I will not be going to trial.").

Any delays in the plea negotiations were caused equally, if not more so, by the government. The government noted that it had been involved in plea negotiations with Leveto and that, if they were to reach an agreement on Monday, the trial would have to be postponed from Tuesday morning because approval from the Department of Justice, and possibly the United States

31

Attorney, would be necessary. Having said "[i]t doesn't sound like we are going to have a trial, as a practical matter," the judge postponed the suppression hearing to October 28th in order to move plea negotiations along and did not set a new trial date. App. 232, 239. On November 8, 2004, another status conference took place. The Court then continued the case for additional plea discussions and requested an answer as to a plea bargain by November 22nd.

Throughout these proceedings, Leveto continually indicated his willingness to plead and was most concerned that the plea be conditional so that he could appeal the denial of his motion to suppress. Although he initially wanted to plead nolo contendere, at one point Leveto offered to enter a conditional guilty plea to all charges, but the government refused to accept the plea unless he entered into a plea agreement waiving sentencing rights under *Blakely v. Washington*, 542 U.S. 296 (2004). Plea negotiations ultimately broke down and the case continued to trial. Leveto had never requested a continuance or attempted to delay trial in any way; nor was it in his interest to do so as he was, and had been, incarcerated pending trial. Moreover, there is no indication that the government was any less responsible for delays caused by these proceedings. In fact, the judge seemed to believe just the opposite.[13] Leveto had not

---

[13.] At one point, the judge observed, "I don't understand why the Government insisted on the – not agreeing to the conditional plea." App. 277. He noted that, although the government had not bargained away anything, it was requiring concessions from the defendant that he had never seen before.

(continued...)

vacillated regarding his need for counsel, as is so often the case in this type of situation.

In order to justify the denial of a request to reinvoke the right to counsel, there typically must be a manipulation or attempt to delay by abuse of the right to counsel. *See Proctor*, 166 F.3d at 402 (collecting cases). Leveto was not a defendant who had toyed with his right to counsel, hiring and firing attorneys or requesting continuances in order to substitute counsel. Rather, his initial attempts to secure counsel prior to his waiver were repeatedly thwarted.[14] After all of his previous

---

[13.](...continued)
App. 287-88, 293-94, 295.

[14.] When Leveto was first detained, Attorney Ross Prather was appointed as counsel, but subsequently was granted leave to withdraw because of a serious conflict of interest. At the May 24, 2004 hearing on Prather's motion to withdraw, it was determined that the regular public defender in Erie also had a conflict. A third attorney, Patty Ambrose, who was available to meet with Leveto at that hearing, determined she had a conflict as well. At the time, Leveto indicated that his first choice was paid counsel, his second stand by counsel, and his third proceeding pro se. On June 2, 2004, the judge held another hearing on counsel and was told that, since the May 24th hearing, one other lawyer had met with Leveto, but, yet again, had been determined to have a conflict. Leveto requested counsel at the hearing, and the judge noted that another CJA panel lawyer should have been, but was not, present to represent

(continued...)

attorneys had proven to have conflicts, Leveto met with Stephen Misko on June 7, 2004 and determined that he wished to proceed pro se with Misko as standby counsel. Misko remained standby counsel throughout all proceedings. The only evidence of "abuse" of *the right to counsel* in this case would be that Leveto first waived his right to proceed pro se and then wanted to withdraw that waiver after plea negotiations failed.

The majority relies on the civil action filed by Leveto and his motion to recuse as obstructive conduct. However, they are not relevant to his right to counsel, as they are not examples of "the tension caused when a criminal defendant appears to be manipulating his right to counsel in order to delay his trial." *Goldberg*, 67 F.3d at 1094; *Fischetti*, 384 F.3d at 145 (discussing defendant's "pattern of uncooperative conduct through which [he] . . . repeatedly complained about counsel and sought to delay or derail his second trial"). Indeed, at trial, when Leveto mentioned the civil action, the District Court acknowledged that the civil action "[has] got nothing to do with this case. That's a separate matter." App. 341. There is no indication that Leveto filed the action in bad faith. Rather, he believed that the judge's extension of the government's time to answer his pretrial motions, after the time for reply had expired, without requiring the government to show excusable neglect was a violation of Local Criminal Rule 12.1(c) and Federal Rule of Criminal Procedure 45(b)(1)(B) and showed the judge's partiality toward the government. Though without merit, Leveto's § 1983 action and the related recusal motion seem to

---

[14.](...continued)
him.

have been designed to protect his constitutional rights rather than delay trial.[15]

Indeed, Leveto had some reason to believe that he was being unjustly treated. When he filed a previous civil action challenging the constitutionality of the method of execution of the search warrant at issue here, the District Court found no violation of his constitutional rights, *Leveto v. Lapina*, No. 98-143, 2000 WL 331902 (W.D. Pa. Feb. 5, 2000). On appeal to our Court, however, we disagreed and held that the agents had violated his rights by detaining him for a lengthy period of time and patting him down during the search. *Leveto v. Lapina*, 258 F.3d 156 (3d Cir. 2001) (Alito, J., writing for the Court, found that IRS agents had violated Leveto's Fourth Amendment rights but had qualified immunity).

At the time he requested counsel, Leveto clearly found himself at a loss, representing himself at a trial that he (and perhaps even the District Court) had not anticipated. Losing the pretrial motions he thought were dispositive, as well as the recusal motion, made manifest his need for counsel in order to mount a defense and make viable legal arguments. It is reasonable to conclude that, having both sued and unsuccessfully moved to recuse the trial judge, Leveto believed that it would be wise to have an attorney represent him. Although the denial of his recusal motion undoubtedly played some role in his request for counsel, it did not represent an abuse

---

[15.] In filing the recusal action, Leveto both certified that the motion was not being made to delay trial and explained that the motion had not been filed earlier because of his extremely limited access to a law library.

of the right to counsel that justified denial of counsel or would have caused a delay.

In fact, there is no evidence in the record that the Court feared a delay, or that granting Leveto's request for counsel would have resulted in any delay at all.[16] Neither Leveto nor his

---

16. The majority suggests that a statement made by defendant during the course of the trial reflects defendant's understanding that the denial of his request prior to any trial proceedings was necessary to prevent a delay. I disagree. The statement–"I'm aware of that, Your Honor. That is, why before it started, I reasserted the right and I filed the action against you a week before the trial"–was *not* made on May 23, 2005 at the time the District Court denied Leveto's request for counsel. Rather, it occurred on May 31, 2005 mid-way through trial. At that time, before Leveto was to present his defense and make an opening statement, which he had reserved, he referred to a passage in the government's trial brief to the effect that "a defendant who has previously waived the right to counsel may be allowed to withdraw the waiver and reassert the right." App. 339. The following ensued:

| Court: | You never withdrew. |
|---|---|
| Leveto: | I never withdrew what? |
| Court: | You never withdrew your choice of proceeding pro se. |
| Leveto: | When I told you I wanted to be represented by a lawyer? |
| Court: | The day of the trial? Or – no. |

(continued...)

36

standby counsel made a request for a continuance. Nor can we assume that one would have been necessary. In the absence of any record support, we cannot engage in conjecture that Misko–Leveto's standby counsel who had followed all the proceedings and was present–would not have been able to step in as counsel immediately. In fact, inherent in the role of standby counsel is that he or she "must be ready to step in if the accused wishes to terminate his own representation." *United States v. Bertoli*, 994 F.2d 1002, 1018-19 (3d Cir. 1993); *see also* Anne Bowen Poulin, *The Role of Standby Counsel in Criminal Cases*, 75 N.Y.U. L. Rev. 676, 708-09 (2000). Misko had been standby counsel for almost a year, participated in

---

16.(...continued)
Leveto:      There were other extenuating circumstances, Your Honor.

Court:       Well, that's too bad.

App. 339. The Court then said, "Under the circumstances of this case, I can't imagine stopping now and appointing Mr. Misko or anyone to represent you and prepare to defend a case like this. You can't do it. You can't operate that way." App. 341. Leveto's statement in response does not represent his agreement that, when the District Court denied his pre-trial request for counsel more than a week earlier, it was properly motivated by delay. More correctly construed, it is a simple acknowledgment that Leveto believed the request to be appropriate when he first made it, before the trial began, and accepted that a request made mid-trial would be untimely.

37

pretrial conferences, received discovery, attended the suppression hearing, and arranged his schedule to be present at trial and available should Leveto require assistance in his defense.

Even if Misko had indicated he was unprepared and needed a continuance, the Court could have properly denied the request for a continuance and given Leveto the choice between proceeding pro se or proceeding with Misko, even though he was unprepared.

*United States v. Pollani* is instructive. 146 F.3d 269 (5th Cir. 1998).[17] In that particular case, the defendant had hired two lawyers while also filing many pro se motions, including one requesting that his lawyer be held in contempt. *Id*. at 270. He indicated he wanted to proceed pro se but would be retaining new counsel and was warned that he should do so immediately because the trial would not be continued. *Id*. He continued pro se, but, four days prior to trial, his new lawyer (Mr. Snow) requested he be substituted as counsel and granted a continuance to prepare for trial in a case with which he was unfamiliar. *Id*. at 271. The court denied the request for a continuance and then precluded Snow from representing Pollani because Pollani "had made a 'knowing decision' to represent himself, and an eleventh-hour substitution of counsel would not be permitted"; the lawyer was appointed standby counsel instead. *Id*. The

---

[17.] *See also United States v. Taylor*, 933 F.2d 307, 313 n.4 (5th Cir. 1991) (discussing Leveto's precise factual scenario here in hypothetical form and concluding that it would "[t]here can be no question that the defendant in such a case has been deprived of his right to counsel").

38

Court of Appeals for the Fifth Circuit reversed and ordered a new trial. It reasoned that, although the trial court did not abuse its discretion by denying defendant's request for a continuance, it had violated his right to counsel by refusing to allow the attorney, whom he had retained and who was available, to represent defendant at trial. While recognizing that "[i]t is true enough that Pollani was vigorously attempting to delay the start of the trial," the Court reasoned:

> This case is unlike other cases in which the district court declined to allow substitution of retained counsel for appointed counsel at the last minute, when to do so would require a continuance and delay the start of trial. *See United States v. Silva*, 611 F.2d 78, 79 (5th Cir. 1980). This case is also unlike cases in which the district court denied a continuance that would be necessary for a defendant to be represented by particular counsel of his choice who was retained at the last minute. *See, e.g., Neal v. Texas*, 870 F.2d 312, 315 (5th Cir. 1989). Those cases were decided on the basis of an appropriate denial of a continuance. They are distinguishable because in those cases the defendant was only deprived of exercising the right to counsel in a particular way which would unjustifiably delay the trial process. Had Pollani been seeking appointed counsel four days before the trial was to begin, the district court could have denied the request-there was not enough time to appoint counsel at that late date. Had Pollani been seeking a delay because his retained counsel had a conflict, the district court

39

could deny the request-Pollani waited too long to appoint counsel, and he would have known the trial date when he hired his lawyer. As we have already explained, the district court in this case was entirely justified in denying a continuance in light of Pollani's purpose of delay and the explicit warning that a continuance would not be granted in the event that Pollani waited too long to retain counsel.

The justifications for proceeding on schedule do not, however, justify the district court's refusal to allow Snow to participate. This case is different because Pollani had arranged to be represented by counsel instead of representing himself, and no delay was required for Pollani to exercise his right to do that. . . . The Constitution protects Pollani's right to counsel under these circumstances, and the district court erred in disallowing Snow to represent Pollani at trial.

*Id*. at 273-74. Like the defendant in *Pollani*, Leveto was deprived of his Sixth Amendment counsel when the District Court denied his request to proceed with counsel.

### III. The District Court erred in failing to develop the record as to the defendant's attempted revocation of waiver

The District Court committed reversible error by failing to address the proper considerations in connection with Leveto's request. The judge did not develop the record or inquire of Leveto in an attempt to respect his Sixth Amendment right. Nor did he balance Leveto's right to counsel against the court's interest in proceeding. Importantly, Leveto did not request substitute counsel; rather, he asserted his right to counsel. *See Buhl v. Cooksey*, 233 F.3d 783, 798 (3d Cir. 2000) (making clear that a defendant seeking to dismiss counsel and proceed pro se is not moving to substitute counsel).

When prior to jury selection a defendant asks to fire counsel and proceed pro se, rather than substitute counsel, we require the trial court to safeguard the Sixth Amendment through an extensive inquiry to make certain the defendant understands the ramifications and also to "determin[e] if the request is merely an attempt to delay and derail proceedings, as opposed to a genuine attempt . . . to conduct one's own defense." *Id*. If we are so careful when permitting a defendant to proceed pro se, must we not be equally careful–or perhaps more so–when the defendant realizes he is not capable of proceeding pro se? Given that representation by counsel is the constitutional default position, such an inquiry is no less necessary when a defendant seeks to revoke his waiver and proceed with counsel. *See Brown v. Wainwright*, 665 F.2d 607, 611 (5th Cir. 1982) (en banc) ("Since the right of self-representation is waived more easily than the right to counsel at the outset, *before* assertion, it is reasonable to conclude it is more easily waived at a later point, *after* assertion."). The

41

majority appears to concede this point, noting that "[t]he significance of representation by professional legal counsel demands that any decision that touches upon the availability of counsel must be investigated and explained on the record" – precisely what the District Court failed to do here.

*United States v. Proctor*, 166 F.3d 396 (1st Cir. 1999), strongly supports this view. In *Proctor*, the defendant had engaged in highly relevant manipulative conduct, hiring and firing two lawyers while accusing them of various offenses against him, then proceeding pro se with standby counsel, and ultimately requesting counsel in the middle of an evidentiary hearing. Yet, the court of appeals held that the trial judge could not reject the defendant's request for counsel without express findings. The court reasoned:

> While Proctor's earlier rejection of two attorneys and the timing of his most recent flip-flop over representation may have afforded some grounds for suspicion that he was seeking to manipulate the trial process to suit his own interests, these factors alone-without judicial inquiry eliciting further evidence and express findings on the issue of bad faith manipulation-were insufficiently compelling to permit a court to reject out of hand any new request for counsel. Here, the record suggests a defendant who, despite earlier confidence that he could represent himself better than his appointed attorneys, recognized the value of counsel once confronted with the inadequacy of his own legal skills in the face of actual courtroom problems.

42

*Id*. at 403.  As in *Proctor*, the trial judge here failed to do what was necessary to safeguard the defendant's right to counsel.

Furthermore, even where a defendant does not assert his Sixth Amendment right to counsel but merely moves for a continuance to retain substitute counsel on the eve of trial, "we require district courts to inquire as to the reason for the request." *Goldberg*, 67 F.3d at 1097 (reversing although the judge had made an explicit finding that the defendant was using his right to counsel to manipulate and delay his trial).  A trial court's authority to deny such requests is carefully circumscribed.  They may only be denied if shown to be made in bad faith, for purposes of delay, or to subvert judicial proceedings.  *United States v. Romano*, 849 F.2d 812, 819 (3d Cir. 1988); *but see United States v. Rankin*, 779 F.2d 956, 960 (3d Cir. 1986) (observing that "a rigid insistence on expedition in the face of a justifiable request for delay can amount to a constitutional violation").  Such cases typically have lower stakes than those here, as the constitutional calculus there involves a defendant's right to counsel of his choice, rather than the right to counsel.[18] Nonetheless, where, because the court denies the request to substitute counsel, the defendant proceeds represented by counsel not of his or her choice, we will find a Sixth Amendment violation if there is no inquiry on the record. *Goldberg*, 67 F.3d at 1097.  As we have said, "even well-

---

[18.] Sometimes this amounts to proceeding with counsel of his or her choice who is unprepared, prepared counsel who is unwanted, or pro se; in other situations, it involves a choice between constitutionally adequate counsel who he or she seeks to replace, and proceeding pro se.

43

founded suspicions of intentional delay and manipulative tactics can provide no substitute for the inquiries necessary to protect a defendant's constitutional rights." *United States v. Welty*, 674 F.2d 185, 189 (3d Cir. 1982).[19]

The trial judge erred by failing to conduct any inquiry of the defendant or to develop the record as to his request. While the majority reasons through the judge's ruling, the judge did not do so. Instead, he concluded summarily that it was too late. He did not question the sincerity of Leveto's feelings of inadequacy or his need or desire to be represented. While trial judges should, of course, be permitted to make judgments as to the conduct of proceedings before them and should be free to exercise discretion in so doing, when the right to counsel in a complicated criminal trial is implicated, the determination by the court must be correct as a matter of law, and there must be an in-depth exploration of the desire and need for counsel–as is done when permitting a waiver at the outset–giving due consideration to the ramifications for the individual on trial. *See Tuitt v. Fair*, 822 F.2d 166, 174 (1st Cir. 1987) ("Where the two rights [to self-representation and to counsel] are in collision, the nature of the two rights makes it reasonable to favor the right to

---

[19] The majority nonetheless contends that "we do not insist upon a formal inquiry or colloquy where the rationale**s** for the request and decision are clearly apparent on the record," citing only *United States v. Peppers*, 302 F.3d 120, n.12 (3d Cir. 2002), as support. However, this footnote does not do away with our longstanding requirement of inquiry; it merely summarizes our decision in *United States v. Salemo*, 61 F.3d 214 (3d Cir. 1995).

44

counsel which, if denied, leaves the average defendant helpless."). The consistent theme of our jurisprudence in this area is that a defendant should not be forced to proceed to trial without counsel. Here, I believe that occurred.

Accordingly, I dissent from the majority's view. I would vacate Leveto's conviction and remand for a new trial with counsel.

_____