John Stanley WOJTOWICZ, Appellant,

v.

UNITED STATES of America, Appellee.

No. 598, Docket 76–2106.

United States Court of Appeals, Second Circuit.

Argued Jan. 18, 1977.
Decided Feb. 22, 1977.

stood by this court in *Mapp v. Warden, supra*, 531 F.2d at 1173.

Edward M. Chikofsky, New York City, for appellant.

Gary A. Woodfield, Asst. U. S. Atty, Brooklyn, N. Y. (David G. Trager, U. S. Atty., E. D. N. Y., Bernard J. Fried and Cheryl M. Schwartz, Asst. U. S. Attys., Brooklyn, N. Y., on the brief), for appellee.

Before LUMBARD, FEINBERG and MULLIGAN, Circuit Judges.

LUMBARD, Circuit Judge:

John Stanley Wojtowicz appeals from orders of the Eastern District, dated January 15, 1976 and February 26, 1976, in which Judge Platt denied without an evidentiary hearing appellant's *pro se* petitions pursuant to 28 U.S.C. § 2255 to vacate or modify the sentence of 20 years imprisonment imposed by Judge Travia on April 23, 1973, after he pleaded guilty to one count of armed bank robbery. On appeal appellant contends that an evidentiary hearing was required to determine: whether he was competent at the time he entered the plea of guilty and at the time of his subsequent sentencing, whether his plea was rendered involuntary because of coercion by his family or was improperly influenced by a sentence promise made by his attorney, and whether he was denied the effective assistance of counsel. The court finds that, with the exception of his argument regarding his competency at sentencing, appellant's claims are without merit; accordingly, we remand to the district court for a hearing limited to the issue of appellant's competency at the time he was sentenced.

On August 31, 1972 appellant and two confederates attempted to rob a Brooklyn branch of the Chase Manhattan Bank, located at Avenue P and East Third Street, of approximately $37,000. in cash and travelers' checks.

A short time after the bandits arrived at the bank one of Wojtowicz's confederates fled the scene. Undaunted, appellant and his remaining comrade continued the robbery; however, before they could make their escape with the loot, the police arrived at the scene. Thereafter, a bizarre set of events unfolded. The police laid siege to the bank while the bandits held the bank employees hostage inside. Negotiations led to a plan by which the robbers were to be taken to Kennedy Airport, where an airplane was to be waiting to transport them to some unknown destination. This plan failed as well, however. Upon their arrival at Kennedy the FBI closed in; appellant was captured and his confederate was shot and killed. These events have been preserved for posterity in dramatic form by the film "Dog Day Afternoon."

Wojtowicz was subsequently indicted on three counts of bank robbery in violation of 18 U.S.C. §§ 2113(a), (d), and (e) and upon one count of conspiracy. Because hostages were taken, he faced the possibility of the death penalty on the third count. 18 U.S.C. § 2113(e). After arraignment Mark Landsman was appointed as appellant's counsel. Landsman also represented appellant in negotiations involving the sale of the movie rights to "Dog Day Afternoon."

At Landsman's request, on September 12, 1972 the court ordered that appellant undergo a psychiatric examination to determine his competency to stand trial, pursuant to 18 U.S.C. § 4244. Thereafter, appellant was confined to Kings County Hospital for three weeks, during which time he underwent psychiatric observation. The psychiatrist's report, dated October 6, 1972, noted that appellant's medical history indicated he had visited St. Vincent's Hospital on three occasions, where he received treatment for chronic schizophrenia; however, the report stated that "[t]here is no psychosis or schizophrenia present in this defendant." The report also recounted appellant's homosexual entanglements and his claim that he committed the bank robbery in a desperate attempt to obtain money for his male paramour's transsexual operation.[1] The report concluded by stating that appellant appeared to be "a well educated, fairly intelligent male who is functioning above the average level. It is my opinion that the defendant is competent and fit to proceed."

On February 16, 1973 Wojtowicz offered to plead guilty before Judge Travia to count two of the indictment, which carried a maximum penalty of 25 years imprisonment and a $10,000. fine, pursuant to an agreement with the government under which the remaining counts of the indictment were to be dismissed. Before accepting the plea, Judge Travia conducted an extensive Rule 11 inquiry. It was brought out that appellant had attempted suicide some time early in 1972 and had been treated as an out-patient at St. Vincent's Hospital and had visited a psychiatrist in March of 1972. In response to the court's questioning, appellant indicated that he was aware of what he was doing at the time of the crime. The court queried appellant concerning his desire to plead guilty, his satisfaction with his attorney and whether he had been induced to plead guilty by threats or promises. Appellant also explained his understanding of the agreement with the government, which the court confirmed as correct. The court established that appellant understood the nature of the charges to which he would plead, the maximum penalty the court could impose, and the nature of the rights he would waive. The terms of the agreement with the government were laid out on the record and appellant described his participation in the crime and admitted his guilt. During the court's inquiry it was brought out that up until that morning Landsman had been under the misimpression that the maximum penalty possible under count three was life imprisonment and was not aware of the possibility of the death penalty.

Prior to imposing sentence on April 23, 1973, Judge Travia asked Wojtowicz about a letter he had written the court expressing dissatisfaction with his attorney. Appellant then explained that he felt counsel had failed to bring certain matters to the court's attention, had failed to make certain motions, and had not released funds entrusted to him by appellant. In the course of this discussion appellant also stated that in making his decision to plead guilty his family had placed pressure upon him; particularly, appellant stated that Ernie, his male paramour, thought he should plead guilty in order to obtain a shorter sentence and that he thought Ernie might leave him if he did not plead guilty. After further discussion with counsel and appellant, Judge Travia indicated that while he was not disposed to relieve Mr. Landsman, he might consider granting an application to withdraw the plea. The court recessed until 2:00 that afternoon to give appellant an opportunity to discuss matters with his attorney and his family.

After the adjournment, appellant indicated that he was ready to be sentenced. Before accepting the plea the court again queried appellant concerning his understanding of the charges and the consequences of his plea. After counsel spoke on his behalf, appellant engaged in a rather eloquent, but bizarre allocution; he explained that he knew his acts to be wrong

1. The record indicates that some time in December, 1971 appellant engaged in a homosexual wedding ceremony. Wojtowicz also had a wife and two children.

but that he desperately needed the money to obtain a transsexual operation for Ernie, in order to prevent Ernie from committing suicide. Judge Travia then sentenced appellant to imprisonment for twenty years.

On August 15, 1973 Landsman filed a Fed.R.Crim.Pro. 35 motion for reduction of sentence, in which he averred, *inter alia*, that "just prior to sentence" appellant had inflicted injuries upon himself and was in poor physical condition and a "highly nervous state during which he made certain statements which may have inadvertently antagonized the Court." [2]

On October 21, 1975 appellant, acting *pro se*, filed a petition (the basis of the present appeal) to have his sentence vacated pursuant to 28 U.S.C. § 2255 or, in the alternative, to have his sentence reduced pursuant to Rule 35. The petition alleged that counsel had induced appellant to plead guilty upon the understanding that he would be sentenced to no more than 10 to 15 years.[3] In support of the petition, appellant's wife, male paramour, and mother submitted affidavits averring, *inter alia*, that appellant had received psychiatric treatment at St. Vincent's Hospital for an attempted suicide and that they had urged him to plead guilty after being told by his attorney that appellant would not receive a term greater than 10 or 15 years. In addition, appellant's "jail-house lawyer" filed an affidavit stating that appellant had told him of Landsman's sentence estimate and appellant's reliance thereon. Landsman also submitted an affidavit in which he stated that he had not promised anyone connected with the case that Wojtowicz would receive a term of only 10 or 15 years.

Judge Travia having resigned, the petition was referred to Judge Platt, who found in an opinion dated January 15, 1976, that examination of the sentencing minutes left no doubt that appellant had been made fully aware of the maximum penalties possible under count two of the indictment and that Judge Travia alone would determine the sentence within the maximum prescribed by statute. Noting that appellant had not claimed his plea was involuntary, the court pointed out that assuming there had been an incorrect sentence estimate, such estimate could not serve as the basis for a § 2255 attack unless measured by objective standards appellant would have been justified in relying on the estimate or unless the erroneous advice amounted to ineffective assistance of counsel. The court then found that appellant had been warned on no fewer than four occasions of the maximum penalty possible and that the record "conclusively demonstrated" that appellant could not reasonably have relied on Landsman's alleged estimate; further, the court found that there was not even an allegation that Landsman's estimate amounted to ineffective assistance of counsel.

On January 30, 1976 appellant, again acting *pro se*, filed papers with the court which were entitled "Motion for Reconsideration." In this motion appellant disputed the court's prior findings and challenged the loyalty of his attorney.[4] Appended to this motion was a handwritten affidavit in which appellant alleged that at about 3:00 a. m. on the morning of sentencing, in despair because he thought that Ernie had left him, he attempted suicide. According to appellant, he first took 100 pills (consisting of Benedrals and Darvons) and when this did not appear to be effective, he slashed his wrists with a razor blade; apparently, appellant then passed out. When

2. The record does not indicate the disposition of the Rule 35 motion; evidently, it was denied.

3. Appellant also challenged federal jurisdiction over the offense, a challenge which has not been pursued on appeal.

4. As is often the case with *pro se* applications, it is somewhat difficult to comprehend the thrust of appellant's arguments. However, it appears that appellant's allegations regarding Landsman were aimed at showing that appellant had been apprehensive of bringing the alleged sentence promise to the court's attention at sentencing, perhaps out of fear of jeopardizing the agreement with the government to drop the remaining charges or because he was unsure of counsel's loyalty.

he regained consciousness appellant claims to have been taken to St. Vincent's Hospital where he was sutured. After some discussion by the marshals it was decided that despite his physical and mental deterioration, he would be taken to court that morning for sentencing. Appellant claims that he has a poor memory of the events that transpired at sentencing and his condition was such that he faded in and out of consciousness during the proceedings. The minutes of sentencing are devoid of any comments by the court or Mr. Landsman that corroborate these claims. On February 26, 1976 Judge Platt denied appellant's motion without opinion.

In a letter to the court dated March 8, 1976, appellant acknowledged receipt of the February 26 order and requested that his letter be treated as a notice of appeal; this request was complied with.

■ Appellant's most substantial claim is that he was entitled to an evidentiary hearing to determine his competency at the time of sentencing. In *United States v. Miranda*, 437 F.2d 1255, 1258 (2d Cir. 1971), this court pointed out that where a claim of mental incompetency is raised in a § 2255 petition, if "the movant has raised detailed and controverted issues of fact, a hearing will be required." See *O'Neil v. United States*, 486 F.2d 1034 (2d Cir. 1973). In the affidavit appended to appellant's January 30 "Motion for Reconsideration" Wojtowicz claims that on the morning of sentencing he attempted to take a drug overdose and slashed his wrists; as a result, he claims that he appeared in court later that morning with his wrists wrapped in bloody bandages, unable meaningfully to comprehend the sentencing proceedings. Appellant's claims find support in Landsman's affidavit submitted in support of the August 15, 1973 Rule 35 motion, which alleged that appellant had inflicted injuries upon himself prior to sentencing and was in a deteriorated state. Similarly, the affidavits submitted by appellant's family in support of his § 2255 petition, appellant's statements at sentencing, and the psychiatrist's report indicate that appellant had attempted suicide on a previous occasion in early 1972 and, thus, lend some credence to his present claim.

If appellant's allegations are true they raise a serious question as to whether he was able meaningfully to exercise his right of allocution or rationally comprehend the nature of the proceedings. See *Saddler v. United States*, 531 F.2d 83, 86 (2d Cir. 1976); *United States v. Miranda, supra*, 437 F.2d at 1237; cf. *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). The government contends that the sentencing minutes do not substantiate claims of unusual behavior on appellant's part and that neither Judge Travia nor Mr. Landsman made any comments that would corroborate appellant's claim. However, the apparent regularity of the proceedings cannot "conclusively show" that appellant's claim, which is based on facts outside the record, is without merit. *United States v. Miranda, supra*, 437 F.2d at 1257–58; *United States v. Malcolm*, 432 F.2d 809, 813 (2d Cir. 1970). In sum, despite the fact that appellant raised his claim of incompetency for the first time in his "Motion for Reconsideration," the court finds that appellant set out sufficiently detailed and controverted factual allegations to require that the case be remanded to the district court for a hearing on this issue.[5] See *Fontaine v. United States*, 411 U.S. 213, 215, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973); *United States v. Taylor*, 487 F.2d 307, 308 (2d Cir. 1973).

■ Appellant's claim that he was incompetent at the time he pleaded guilty stands

5. To a large extent the issue of appellant's competency will turn upon whether the alleged suicide attempt actually took place. If the evidence shows that there was no such attempt, the court's inquiry will be at an end. If the suicide attempt is found to have occurred, then it will become necessary for the court to order an examination to determine whether appellant was competent to be sentenced. While such retrospective examinations are frowned upon, they are necessary when no other reasonable alternatives remain. *Saddler v. United States*, supra, 531 F.2d at 87.

on much weaker footing. Reading appellant's *pro se* papers liberally, neither his original § 2255 petition nor his motion for reconsideration contain any specific factual allegations in support of the claim he now raises on appeal. See *O'Neil v. United States, supra*, 486 F.2d at 1036. In *United States ex rel. Curtis v. Zelker*, 466 F.2d 1092 (2d Cir. 1972), cert. denied, 410 U.S. 945, 93 S.Ct. 1405, 35 L.Ed.2d 612 (1973), this court held that where, as here, a defendant has been found competent in an examination conducted pursuant to 18 U.S.C. § 4244, the district court is not required to hold a competency hearing before accepting a plea and " 'absent some unusual circumstances, . . . a Section 2255 (28 U.S.C. § 2255) collateral attack on the sentence based on the same ground will not ordinarily be permitted.' " 466 F.2d at 1100, quoting *Hanson v. United States*, 406 F.2d 199, 202 (9th Cir. 1969).

Neither the record nor appellant's petitions indicate that there were any "unusual circumstances" that would warrant re-examination of Wojtowicz's competency at the time of pleading.[6] In between the time appellant was described in the October 6, 1972 psychiatrist's report as "a well educated, fairly intelligent male who is functioning above the average level" and the time the plea was entered on February 16, 1973, the record does not indicate and appellant's *pro se* papers do not allege any facts that would call into question his competency. Further, assuming that Wojtowicz's suicide attempt occurred as alleged, the act took place and the motivation (appellant's belief that his male paramour had deserted him) arose subsequent to the entry of the plea. Although appellant correctly cites *Saddler*

*v. United States, supra*, for the proposition that under some circumstances a defendant's apparent incompetency at sentencing may call into question his competency at the time of pleading, the court in *Saddler* was faced with a record which, unlike the present case, indicated that a "flurry of warning flags" should have alerted the sentencing court to the possibility that the defendant had been incompetent when he entered his plea, 531 F.2d at 87. In *Saddler* the defendant had an extensive history of narcotics addiction and mental illness, the record at sentencing made it apparent that the defendant was lacking in mental capacity, and the court had specifically refused to order a competency examination despite requests from both prosecution and defense that this be done. In sum, beyond the mere allegation of incompetency raised on appeal, appellant has not alleged any facts or pointed to any evidence in the record that would warrant reopening the issue of his competency to plead. See *Dalli v. United States*, 491 F.2d 758, 760 (2d Cir. 1974); *O'Neil v. United States, supra*, 486 F.2d at 1036.

■ Appellant's arguments that his plea was the product of family coercion and an erroneous sentence promise by counsel merit little discussion. At the outset, it is questionable whether the claim of family coercion was raised before the district court and has been properly preserved for appeal. See, e.g., *United States v. Hermann*, 524 F.2d 1103, 1104 (2d Cir.1975); *Fields v. United States*, 438 F.2d 205 (2d Cir.), cert. denied, 403 U.S. 907, 91 S.Ct. 2214, 29 L.Ed.2d 684 (1971). However, reading appellant's petitions most charitably, his claim of family coercion is based on two factors:

---

6. Many of appellant's claims regarding events at both sentencing and the time of entering the plea are based on "contemporaneous press accounts" of Wojtowicz's behavior. However, the article referred to was not presented to the district court until appellant filed his "Petition for Sentence Modification and Injunctive Relief" on May 12, 1976—approximately three months after the court's rejection of his February 26 "Motion for Reconsideration." The May 12 papers sought sentence reduction and a transfer pending appeal. Appended to the mo-

tion was the article upon which appellant now relies. Thus, for the first time on appeal appellant attempts to present this court with evidence which could not have been considered by the district court in conjunction with appellant's present claims. In any event, this media report was hearsay, which, in making the threshold determination whether a hearing is required under 28 U.S.C. § 2255, ordinarily will not entitle the petitioner to a hearing. See *Dalli v. United States*, 491 F.2d 758, 760 (2d Cir. 1974).

first, that portion of the sentencing minutes in which Wojtowicz stated that his family had placed pressure upon him and that he had been afraid that his male paramour would not be willing to wait for him if he went to trial and was found guilty on all counts; and, second, the affidavits of appellant's wife, male paramour, and mother stating that they urged him to plead guilty after being told of counsel's sentence estimate. Taking all of these statements as true, they do not support appellant's claim that his will was overborne by family pressure. Indeed, the affidavits and the portions of the record relied upon indicate that appellant's family was concerned with the dim prospects of a trial and felt that he would fare better by entering a plea. In similar circumstances we have held that "[a]dvice—even strong urging—by those who have an accused's welfare at heart, based on the strength of the State's case and the weakness of the defense, does not constitute undue coercion." *Lunz v. Henderson*, 533 F.2d 1322, 1327 (2d Cir.) *cert. denied*, 429 U.S. 849, 97 S.Ct. 136, 50 L.Ed.2d 122 (1976). See *United States ex rel. Brown v. LaValle*, 424 F.2d 457, 460–61 (2d Cir. 1970), *cert. denied*, 401 U.S. 942, 91 S.Ct. 946, 28 L.Ed.2d 223 (1971).

Similarly, as the district court found, taking appellant's allegations regarding counsel's "sentence promise" as true, the record conclusively establishes that appellant could not have been reasonably justified in relying on any such promise; accordingly, the district court correctly rejected this claim. See *Mosher v. LaValle*, 491 F.2d 1346, 1347 (2d Cir.), *cert. denied*, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974); *United States ex rel. Curtis v. Zelker, supra*, 466 F.2d at 1098. Judge Travia exhaustively questioned appellant before accepting his plea and at sentencing, he fully advised him of his rights and warned him on no less than four occasions of the maximum penalties possible.

■ Appellant's final claim is that he was denied the effective assistance of counsel. Here too it is questionable whether this claim was raised in any recognizable form before the district court; however, the record in this case leaves no doubt that counsel's advice was not "[outside] the 'range of competence demanded of attorneys in criminal cases.'" *Tollett v. Henderson*, 411 U.S. 258, 264, 93 S.Ct. 1602 (1973), quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). See *Rickenbacker v. The Warden, Auburn Correctional Facility*, 550 F.2d 62, at 66 (2d Cir. 1976). In evaluating claims of ineffective assistance of counsel it has long been the rule that "time consumed in oral discussion and legal research is not the crucial test . . . The proof of the efficiency of such assistance lies in the character of the resultant proceedings, . . ." *United States v. Wight*, 176 F.2d 376, 379 (2d Cir. 1949), *cert. denied*, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950). See *United States ex rel. Marcelin v. Mancusi*, 462 F.2d 36, 42 (2d Cir. 1972), *cert. denied*, 410 U.S. 917, 93 S.Ct. 977, 35 L.Ed.2d 279 (1973). In the present case appellant's only possible defense was that of insanity. The record indicates that counsel made conscientious efforts to provide the psychiatrist conducting the 18 U.S.C. § 4244 examination (which counsel had requested) with information indicating that appellant was not mentally capable. Although the examination was only to determine competency to stand trial, the extensive psychiatrist's report was dated barely six weeks after the robbery and cast in significant doubt the viability of an insanity defense. The record indicates that after examining the report counsel discussed the possibility of negotiating a plea with appellant and turned his efforts in that direction; under the circumstances, we cannot say this decision was unreasonable. See *Lunz v. Henderson, supra*, 533 F.2d at 1327, n.7; *United States ex rel. Marcelin v. Mancusi, supra*, 462 F.2d at 44. Likewise, counsel's error as to the maximum penalty possible under count three of the indictment (which was dismissed) did not render his representation constitutionally defective, see e.g., *United States ex rel. Scott v. Mancusi*, 429

F.2d 104, 109 (2d Cir. 1971), *cert. denied*, 402 U.S. 909, 91 S.Ct. 1385, 28 L.Ed.2d 651 (1971). Appellant asserts there was a conflict of interest from the fact that counsel's fee and the expenses of the defense were to be paid from a fund created by the sale of the movie rights to "Dog Day Afternoon," which counsel helped to negotiate. While we do not regard the practice as worthy of emulation, we cannot say that it rendered counsel's representation constitutionally defective. As regards the alleged "sentence promise," there is not even an allegation in the present case that counsel falsely promised that a bargain regarding the length of appellant's sentence had been struck with the court or the prosecutor. See *Mosher v. LaValle, supra.* There is no indication in appellant's petitions or elsewhere that counsel did anything more than express an honest opinion. See *United States v. Horton,* 334 F.2d 153, 155 (2d Cir. 1964). Finally, appellant contends that counsel's failure to bring appellant's suicide attempt to the court's attention was inexcusable. Assuming there was such an attempt and that appellant's condition was such that counsel should have sought an adjournment, we conclude that any prejudice suffered by appellant can adequately be cured on remand if the district court concludes that appellant was not competent to proceed on the morning of sentencing.

The case is remanded to the district court for a hearing limited to the issue of appellant's competency at sentencing, which at most can result in a re-sentencing of Wojtowicz at a time when he is competent.