## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2011

(Submitted:  April 18, 2012      Decided:  May 16, 2014
Amended:  June 18, 2014)

Docket Nos. 11-5462-cr(L), 10-3393-cr(con)

_____

UNITED STATES OF AMERICA,

*Appellee,*

- v. -

DESMOND KERR,

*Defendant-Appellant.*

_____

Before:

KEARSE, PARKER, and HALL, *Circuit Judges.*

Appeal from the August 6, 2010 judgment of the United States District Court for the Northern District of New York (Glenn T. Suddaby, *District Judge*), convicting Appellant, following his mid-trial guilty plea, of possession with intent to distribute methylenedioxymethamphetamine and sentencing him principally to 121 months' incarceration.  We affirm for the reasons set forth below.

AFFIRMED.

> KATHERINE ALFIERI, Law Offices of Katherine Alfieri, New York, NY, *for Defendant-Appellant Desmond Kerr.*

> RAJIT S. DOSANJH, Assistant United States Attorney (Ransom P. Reynolds, Assistant United States Attorney, *on the brief*), *for* Richard S. Hartunian, United States Attorney for the Northern District of New York, Syracuse, NY, *for Appellee United States of America.*

1

HALL, *Circuit Judge*:

Defendant-Appellant Desmond Kerr is a Canadian citizen who was arrested by United States customs authorities after they searched his vehicle at the U.S.-Canadian border and discovered thousands of pills containing 3, 4 methylenedioxymethamphetamine ("MDMA"), a Schedule I controlled substance. Kerr was charged with one count of knowingly and intentionally possessing MDMA with intent to distribute, in violation of 18 U.S.C. § 841(a)(1) and (b)(1)(C). A turbulent pretrial period ensued, during which Kerr ceased communicating with and then effectively fired his first two appointed attorneys, insisted on pressing several ill-advised theories of defense to the exclusion of all others, and underwent a court-ordered competency examination that ultimately found him competent to stand trial. Kerr elected to represent himself at trial but, with the assistance of a newly appointed attorney, pled guilty midway through. After entering his plea, Kerr resumed his prior behavior: he again refused to communicate with counsel and filed numerous *pro se* motions in which he sought to withdraw his plea, press his theories of defense, and obtain the assistance of new counsel. At sentencing, Kerr's attorney expressed concern about Kerr's mental stability and represented that Kerr had been unable to help him prepare for sentencing; the district court also commented on Kerr's belligerent and counterproductive behavior. Ultimately, the district court sentenced him principally to 121 months' imprisonment, rejecting his several sentencing arguments.

Through new counsel, Kerr argues on appeal that his "erratic" and "irrational" behavior following the entry of his plea required the district court to hold a competency

hearing before imposing sentence and that he was deprived of his Sixth Amendment right to counsel by the denial of his multiple post-plea requests for an attorney to help him withdraw his plea. He also challenges several aspects of the sentence imposed. In a separate *pro se* brief, Kerr contends that the district court erroneously denied his *pro se* motion to withdraw his plea and challenges several pre-plea aspects of his prosecution and trial. We affirm.

## BACKGROUND

In February 2009, Customs and Border Protection officers searched Kerr's vehicle as he attempted to enter the United States from Canada at the Alexandria Bay, New York port of entry. In the course of the search, the officers discovered approximately seven thousand pills containing MDMA. The officers found the pills in two locations: four thousand were concealed in black packages between the vehicle's front seats, while the remaining three thousand were stowed within the vehicle's rear interior paneling. Together, the seven thousand pills weighed 2,068 grams. Kerr was arrested and charged with one count of possession with attempt to distribute MDMA.

## I. Pretrial Proceedings

Between his February 2009 arraignment and his April 2010 trial, Kerr cycled through a succession of attorneys and inundated the district court with numerous *pro se* requests for its assistance with his several theories of defense. First, in September 2009, Kerr moved to replace the Federal Public Defender initially assigned to his case. The district court granted the motion and, after Kerr expressed dissatisfaction with a second attorney, appointed Jeffery DeRoberts as new counsel. Several weeks later, DeRoberts informed the court that Kerr was unhappy with his representation and had requested that the court appoint a

3

different attorney known to Kerr. The district court denied this request, explaining that Kerr was not entitled to choose assigned counsel. At a subsequent conference and suppression hearing held in October 2009, Kerr alleged that the government had improperly destroyed a number of the recovered MDMA pills, that the assigned Assistant United States Attorney ("AUSA") had committed perjury, and that his various attorneys had refused to file motions addressing these issues.[1] When Kerr continued to interject and press these *pro se* arguments, the district court halted the proceedings to inquire whether he understood the charge against him, the potential penalties he faced, and the importance of his attorney. Kerr confirmed that he was charged with possession with intent to distribute, stated that he understood the penalties, and acknowledged that his lawyer had knowledge of the law and court procedure he did not possess.

On December 9, 2009, some five days before the scheduled trial date, the district court held a final pretrial conference during which Kerr represented that DeRoberts was "ineffective" and in "dereliction of duty." Kerr repeatedly stated that he did not want DeRoberts to speak on his behalf or appear at trial, and that he wished to represent himself. The court acknowledged Kerr's right to self-representation and stated that DeRoberts would

---

[1] In December 2009, Kerr filed a *pro se* notice of appeal from the district court's denial of his suppression motion and his motion to dismiss the indictment due to the government's destruction of evidence. The resulting interlocutory appeal remained pending in this Court without substantive filings by either party until October 2011, when the government moved to dismiss the appeal as taken from a non-final order. By that time, however, the interlocutory appeal had been designated the lead case and consolidated with Kerr's August 2010 appeal from his final judgment of conviction, which by then was fully-briefed. In February 2012, we denied the government's motion to dismiss, but construed Kerr's arguments made in the interlocutory appeal as relating to his 2010 appeal from the final judgment.

be available at trial as standby counsel. Kerr objected to this proposal, informing the court that he wanted to call DeRoberts as a defense witness to testify about the government's "perjury" as to the existence of certain surveillance videotapes of the border crossing. Kerr also requested that the court subpoena several other witnesses, including the then-Chief Judge of the Northern District of New York and the then-interim United States Attorney for the Northern District of New York. Kerr refused to explain his reasons for subpoenaing these last witnesses, stating only that the court would "find out" on the date of trial.

Expressing concern with Kerr's "wilder and wilder" requests and "self-destructive" decisions, the district court adjourned the trial and ordered him, pursuant to 18 U.S.C. § 4241(a), to undergo a mental competency examination. After examining Kerr, psychologists at the Federal Medical Center ("FMC") found him competent to stand trial and presented those results in a forensic medical report dated March 19, 2010. The report described Kerr as "an obstinate, strong-willed, and opinionated individual" whose dissatisfaction with his attorneys stemmed not from "psychotic symptoms," but rather from "his belief that his attorneys ha[d] not done sufficient work to mount an adequate defense." The report also explained that Kerr's defensive strategy of accusing the AUSA of perjury, while possibly imprudent, was not evidence of incompetence. In sum, the report concluded that Kerr was able to assist his attorney in preparing a defense if he so chose, and that there was no "objective evidence" that he suffered from "a mental disorder which would impair his ability to understand the nature and consequences of the court proceedings against him."

The district court reconvened on March 31, 2010. On that date, Kerr did not permit DeRoberts to sit with him at counsel table. He adamantly expressed his desire to represent

5

himself with the assistance only of standby counsel, insisting that the results of the competency evaluation proved his ability to do so. The court granted DeRoberts's resulting motion to withdraw on the ground that there had been a complete breakdown in attorney-client communication. In his stead, the court appointed Robert Wells as standby counsel and directed Kerr to consult with him. At the close of the conference, the court scheduled trial to begin on April 14, 2010 and explained to Kerr that it would ask him a series of questions at the beginning of trial to ensure he fully understood the implications of self-representation.

## II.     Trial and Guilty Plea

On the scheduled trial date, Kerr appeared with Wells as standby counsel. Before jury selection, the district court stated that it had previously "advised [Kerr] of the disadvantages of representing [himself]" and inquired of Kerr whether that remained his intention. Kerr confirmed that it was. The court cautioned him that self-representation was "very difficult" and that, despite his *pro se* status and lack of legal training, he was required to follow the court's instructions and comply with the rules of evidence and procedure. When Kerr renewed his request to subpoena three witnesses—his former attorney, the former interim United States Attorney, and the Chief Judge of the Northern District—the court stated that it would issue the subpoenas only if Kerr explained how their testimony was relevant to the pending criminal charge. Kerr demurred, claiming that he should not be required to disclose his theory of defense. Again, the court flagged Kerr's lack of legal training, explaining, *inter alia*, that any testimony of these witnesses would "certainly" be hearsay and the fact that his former attorney represented Kerr in the matter did not make

6

the attorney "a witness with any relevant testimony to offer in this case." The court later

urged Kerr to consult with Wells concerning issues of jury selection.

On April 14, the case proceeded to trial at which Kerr selected a jury in consultation

with Wells; gave an opening statement premised on his theories that the AUSA committed

perjury, the government destroyed evidence, and he was prevented from calling his chosen

witnesses; extensively cross-examined government witnesses; and made relevant objections.

Upon the close of the government's evidence on April 16, however, Kerr informed the court

that he intended to plead guilty to the charge. The following exchange took place:

> THE COURT: Now, have you agreed to allow Mr. Wells to
> represent you in this matter, for this --
> THE DEFENDANT: Yes, your Honor.
> THE COURT: -- in this capacity? Because there are questions
> that I'm going to need to ask him and he needs to advise you
> and hopefully he's talked to you about the Sentencing
> Guidelines . . . .
> THE DEFENDANT: Yes.

Appellant App'x at 96. Following this colloquy, the district court informed Kerr that it was

"going to at this point accept the fact that Mr. Wells is your attorney."

The court conducted a change of plea hearing that same day.[2] Kerr testified that he

was not under the care of a doctor or psychiatrist and that his ability to understand the

proceeding was not impaired. Attorney Wells also stated that he was satisfied that Kerr's

plea was given freely and voluntarily. Based upon these representations and Kerr's other

responses during its Rule 11 inquiry, the court determined that he was "competent and

---

[2] Although Kerr did not plead guilty pursuant to a formal plea agreement, he agreed during the change of plea hearing to withdraw his December 2009 interlocutory appeal from the denial of his suppression motion and motion to dismiss.

capable of entering an informed plea." As to the factual basis for the plea, the government explained that its proof at trial had shown that the Customs and Border Protection officers discovered pills containing MDMA in two locations of Kerr's vehicle and that, in total, the recovered pills weighed 2,068 grams. Kerr confirmed this assessment of the evidence, further explaining that he had entered into an agreement with an unidentified individual whereby the individual would place something in his parked vehicle and then, in exchange for $5,000, Kerr would drive the vehicle from Canada to New York. After accepting the plea, the district court told Kerr that the Probation Department would interview him in connection with his presentence report and that "Wells can be there with you if you like, that's up to you and him."

### III. Post-Plea Proceedings & Sentencing

Several days after pleading guilty, Kerr filed a *pro se* motion to withdraw his plea— the first in a succession of *pro se* motions he filed in the post-plea, pre-sentencing phase of the case. Kerr asserted in the motion that he wanted to "take back" his plea to permit the "the jury [to] find [him] guilty or not guilty." The district court denied his request on April 26, concluding that Kerr's plea allocution satisfied the requirements of Federal Rule of Criminal Procedure 11(b), he had not shown a "fair and just" reason for withdrawing the plea, and he had not accounted for the prejudice that would inure to the government and the court if his request were granted.

On May 14, Kerr requested the appointment of counsel to assist him with, *inter alia*, a motion to withdraw his guilty plea.[3]  The following day, he again moved to withdraw his plea, asserting, without providing specifics, that the AUSA and government witnesses had perjured themselves, he had received ineffective assistance of counsel, there were "valid grounds for withdrawing [his] guilty plea," and he had a "claim of innocence."  Kerr reiterated his request for new counsel in a June 22 letter and in a July 7 *pro se* motion to dismiss the charges due to the government's alleged perjury and destruction of evidence.  In his June 22 letter, Kerr claimed, for the first time, that "standby counsel" provided ineffective assistance by "instructing [him] to plea[d] guilty."  The court denied all pending motions by order entered on July 22, ruling that both Kerr's request for new counsel and his renewed motion to withdraw his plea were "unsupported by a showing of cause," and noting that in April it had denied Kerr's first motion to withdraw his guilty plea.[4]

While these events unfolded, the Probation Department submitted a presentence report in which it held Kerr accountable for the entire quantity of MDMA pills found in the vehicle.  Based on a total offense level of 32 and Kerr's criminal history category of I, the Probation Department calculated Kerr's advisory sentencing range under the United States Sentencing Guidelines as 121 to 151 months' imprisonment.  It also noted that Kerr had

---

[3] Wells informed Kerr before the submission of this letter that, given his affirmations during the change of plea hearing regarding the knowing and voluntary nature of Kerr's plea, he was "prohibited" from assisting Kerr with the motion to withdraw the plea.  Wells also urged Kerr to "return to representing [himself] pro se" so that Wells could advise him as he proceeded.

[4] The court also denied Kerr's several *pro se* motions to set aside the "jury verdict" and to vacate his conviction on various grounds.

refused to meet with the Probation officer tasked with preparing the report. In a *pro se* letter sent shortly before sentencing, Kerr explained that although he had wanted to meet with the Probation officer, he did not wish to do so with Wells present because Wells had "lied" to him during trial.

For his part, Wells explained in a sentencing memorandum submitted on Kerr's behalf that Kerr had refused to meet with him to prepare for sentencing; he also expressed his concern with Kerr's "mental stability." Wells took issue with the FMC psychologists' competency determination, representing that although he had no "training in mental health diagnosis," Kerr's actions over the course of the prosecution were "not that of a rational and undisturbed mind" and he had been unable to help Wells prepare for sentencing. Wells further advised the court that he could not ethically help Kerr with the motion to withdraw the plea because his affirmation at the change of plea hearing that Kerr pled guilty voluntarily created a "classic and irremediable conflict" with respect to that motion. He therefore urged the court to appoint new counsel for purposes of that motion. Finally, Wells argued that Kerr should be held accountable only for the four thousand MDMA pills found between the front seats of his vehicle because there was no evidence he knew about the pills hidden within the rear interior paneling.

The court imposed sentence on August 4, 2010. Although Wells appeared at the hearing, he informed the court that Kerr had instructed him not to speak. In his statement to the court, Kerr again expounded at length upon his theories that the government improperly destroyed a number of the MDMA pills, the AUSA committed perjury, and the court improperly deprived him of the opportunity to call his chosen witnesses at trial. The

court interjected, stating that Kerr was "hung up on . . . insignificant . . . details" irrelevant to sentencing. It went on: "I cannot figure you out, sir, which is why I had a mental exam done. They tell me you're competent and capable but you are the most belligerent individual I have ever met in my life . . . , [and] I can't figure out why." The court further asserted that Kerr's refusal to accept the advice of an attorney had "made [his] situation so much worse." After obtaining Kerr's permission to speak, Wells again expressed his concerns about Kerr's mental state and reiterated his disagreement with the FMC psychologists' competency determination. He also argued that the court should recognize Kerr's minor role as a "courier" or "drug mule."

After hearing from the government, the court adopted the facts contained in the presentence report and found, consistent with the calculations of the Probation Department, that Kerr's Guidelines range of imprisonment was 121 to 151 months. The court sentenced Kerr to 121 months' imprisonment, explaining that it found the sentence "fair, just, and sufficient but not greater than necessary to comply with the goals of sentencing set forth in 18 U.S.C. 3553(a)." The court emphasized that, had Kerr been "more cooperative" with counsel and the Probation Department, it may have been presented with a "fuller record" justifying the imposition of a lesser sentence, especially given his lack of criminal history. Once again, the court remarked that it could not understand Kerr's intransigent behavior. Kerr timely appealed the court's August 6, 2010 judgment. Approximately one week later, he submitted a letter reiterating that Wells was "standby counsel" only and did not speak on his behalf.

**DISCUSSION**

**I.      Kerr's Competency**

Due process "'prohibits the criminal prosecution of a defendant who is not competent to stand trial.'" *United States v. Quintieri*, 306 F.3d 1217, 1232 (2d Cir. 2002) (quoting *Medina v. California*, 505 U.S. 437, 439 (1992)).  A defendant is not competent, and the criminal proceeding against him may not progress, when his "mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162, 171 (1975).  This constitutional right is safeguarded by 18 U.S.C. § 4241, which requires the district court, upon its own motion if necessary, to hold a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. § 4241(a); *see also United States v. Zhou*, 428 F.3d 361, 379 (2d Cir. 2005) (noting that the standards under due process and § 4241 are "essentially equivalent" (citing *Nicks v. United States*, 955 F.2d 161, 168 (2d Cir. 1992))).

The existence of "reasonable cause" is a highly particularized assessment that "'varies in each case.'" *Zhou*, 428 F.3d at 379 (quoting *United States v. Nichols*, 56 F.3d 403, 414 (2d Cir. 1995)).  We have identified several factors upon which the district court may rely when making the reasonable cause determination, including psychiatric reports assessing the defendant's competence, *see Zhou*, 428 F.3d at 379, and the court's own "observations of the defendant's demeanor during the proceeding," *Quintieri*, 306 F.3d at 1233.  *See also Drope*, 420

U.S. at 180 (explaining that there are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine [the defendant's] fitness to proceed"). The right not to be prosecuted while incompetent "spans the duration of a criminal proceeding." *United States v. Arenburg*, 605 F.3d 164, 168 (2d Cir. 2010). A district court must therefore "'*always be alert* to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial,'" *id.* at 168-69 (quoting *Drope*, 420 U.S. at 181) (emphasis in original), an obligation that "takes on increased significance where, as here, a criminal defendant elects to proceed *pro se*," *id.* at 169. We review a district court's decision not to order a competency hearing for abuse of discretion. *Id.*

Here, the district court acted well within its discretion when it declined to order a competency hearing before accepting Kerr's April 16, 2010 guilty plea. Although the court was obviously troubled by Kerr's pretrial behavior, it was entitled to rely on the March 19, 2010 forensic report that found him competent to understand the proceedings and capable of working with his attorney if he so chose. *Zhou*, 428 F.3d at 379. In addition, the district court had the benefit of observing Kerr during the March 31 pretrial conference and the April 14-16 trial. The transcripts of those proceedings show that although he was unfamiliar with the law and court procedure, Kerr vocally advocated on his own behalf, made relevant objections during the government's direct examination of witnesses, and consulted with standby counsel when necessary. During the change-of-plea hearing, Kerr also responded cogently to the district court's inquiries and displayed his understanding of the charge. In short, we discern no unusual circumstances that should have given the district court pause before accepting Kerr's plea. *See Quintieri*, 306 F.3d at 1233; *see also Wojtowicz v. United States*,

550 F.2d 786, 791 (2d Cir. 1977) (where a defendant has been found competent following a court-ordered evaluation, a district court generally is "not required to hold a competency hearing before accepting a plea"); *Saddler v. United States*, 531 F.2d 83, 86 (2d Cir. 1976) (district court under no obligation to question a defendant's competency when his "answers to the court's Rule 11 inquiries, his demeanor and his testimony . . . all appeared to be rational and coherent").[5]

Having concluded that the district court was not required to hold a competency hearing before Kerr's April 16 plea, we must now assess whether the record reflects any "circumstances suggesting a change that would render [Kerr] unable to meet the standards of competence" by the time of his August 4 sentencing. *Arenburg*, 605 F.3d at 168-69 (internal quotation marks omitted). In his counseled brief, Kerr contends there were two such circumstances: his "erratic" and "irrational" post-plea behavior, and Wells's representations that the FMC psychologists "missed something" and that Kerr was unable to help him prepare for sentencing.

We first hold that, upon consideration of the whole record, Kerr's post-plea behavior was not so "erratic" that it should have given the district court reason to doubt his competency. Indeed, the record reflects that Kerr's obstinate, belligerent, and obsessive behavior remained a constant throughout the entire proceedings. The district court ordered the pretrial competency evaluation after it became increasingly disturbed by Kerr's obsession with his *pro se* theories of defense to the exclusion of other issues, his refusal to cooperate or

---

[5] Given this conclusion, we reject any suggestion in counsel's brief that Kerr was "likely" incompetent at the time of his trial and plea. *See* Appellant Br. at 45 & n.12.

communicate with his attorneys, and his insistence on subpoenaing irrelevant witnesses. This is precisely the same behavior Kerr flags as "erratic" in the post-plea phase of the case, when he cut off communication with Wells and repeatedly attempted to press his theories of defense despite having pled guilty. Although the "obligation to be vigilant for reasonable cause [to question the defendant's competency] . . . does not disappear upon a pretrial finding that the defendant is competent to stand trial," *Arenburg*, 605 F.3d at 170 (internal quotation marks omitted), under the circumstances of this case we will not fault the district court—which observed Kerr over the entirety of the proceedings below—for not twice questioning the same behavior. Kerr's situation is therefore distinguishable from those cases in which we have found it necessary for courts to revisit their initial reasonable cause determinations. *See id.* at 169-71 (district court erred by suggesting that a magistrate judge's pretrial competency determination was dispositive of the defendant's competence at trial and was required to revisit the reasonable cause determination where, at trial, the assigned AUSA questioned the defendant's mental stability and the defendant, who had a history of mental illness, made numerous incoherent statements); *Wojtowicz*, 550 F.2d at 789-90 (remanding to the district court for an evidentiary hearing where defendant, who was assessed as competent before the entry of his plea, submitted a post-judgment affirmation stating that he had attempted to commit suicide on the morning of sentencing).

Kerr's obsession with his defensive theories, his distrust of his attorneys, and his belligerent attitude were also not so bizarre as to require the district court to question his competency for a second time. *Compare Arenburg*, 605 F.3d at 171 (reasonable cause to reconsider defendant's competency where "he made repeated references to 'radio waves,'

'microwave channels,' and a conspiracy involving MGM Studios and the government with the object of publicly broadcasting his thoughts"), *and United States v. Auen*, 846 F.2d 872, 874-75, 878 (2d Cir. 1988) (finding reasonable cause for a competency hearing and remanding for the district court to conduct such a hearing where defendant, *inter alia*, compared the agent investigating his case with a cat he had put down, complained that he had been the victim of "psychopolitical terrorism by the Internal Revenue Service," and threatened the government's attorneys), *with Zhou*, 428 F.3d at 380-81 (no reasonable cause to question defendant's competency where the district court had observed the defendant "over a substantial period of time" and the defendant was found competent in a medical report that described him as "defensive, stubborn, and evasive regarding the details of his case"). Disputes between criminal defendants and their attorneys are not at all uncommon, *see United States v. White*, 174 F.3d 290, 296 (2d Cir. 1999), and many defendants "assert that their rights have been denied at every turn," "demonstrate that they do not understand how the legal system handles witnesses," and "forget or choose to ignore what judges said earlier," *Timberlake v. Davis*, 409 F.3d 819, 823 (7th Cir. 2005). In sum, although Kerr "demonstrated that he can be rude, unreasonable, and myopic in his approach to this case, that is not the same as incompetence and is not the type of conduct that implies the kind of mental shortcomings required to oblige a district court to *sua sponte* order a competency examination." *United States v. Alden*, 527 F.3d 653, 660 (7th Cir. 2008).

Against a different backdrop, we may well have greater cause for alarm when confronted with such statements by defense counsel as Wells's that his client was acting irrationally and could not assist with preparing a defense. *Cf. United States v. Kirsh*, 54 F.3d

16

1062, 1071 (2d Cir. 1995) (noting that defense counsel's failure to indicate the defendant could not assist in her defense or understand proceedings was "substantial evidence" of competency). Here, however, the district court had substantially longer experience with Kerr over the course of the proceedings than did Wells, who did not become standby counsel until immediately before trial. In addition, Wells freely acknowledged that, in making these representations, he had "no training in mental health diagnosis." Appellant App'x at 235. Finally, it is apparent that Wells's declaration that Kerr could not help him prepare for sentencing was based on Kerr's refusal to meet with him, which, as we have noted, was consistent with Kerr's pretrial behavior toward his former attorneys. Given all of the above, we hold that the district court did not abuse its discretion by not revisiting the issue of Kerr's competency before imposing sentence.

## II.     Sixth Amendment Right to Counsel during Post-Plea Proceedings

As an initial matter, although Kerr suggests that it "appears . . . [he] never entered a constitutionally sufficient waiver of his right to counsel" because the district court "neglected to engage in the appropriate waiver of counsel inquiry" before allowing him to proceed *pro se*, he expressly forgoes a separate Sixth Amendment claim premised on this supposed deficiency. *See* Appellant Br. at 24 & n.10. We therefore decline to address the propriety of the district court's pretrial ruling permitting Kerr to represent himself. *See Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998) ("Issues not sufficiently argued in the

briefs are considered waived and normally will not be addressed on appeal."); *see also United*

*States v. Greer*, 285 F.3d 158, 170 (2d Cir. 2002) (same).[6]

With respect to the Sixth Amendment arguments he does raise, Kerr first asserts in

his counseled brief that it is unclear from the record whether, at the change of plea hearing,

the district court appointed Wells as counsel for the remainder of the proceedings, or only

for the entry of the plea. Appellant Br. 25. Given this opacity, Kerr advances two

alternative arguments regarding right to counsel. First, he contends that if the district court

elevated Wells from standby counsel to full counsel only for purposes of the plea, then it

deprived him of his right to counsel at a critical stage of the proceeding when it denied his

request for counsel's assistance with his motion to withdraw the plea. Appellant Br. at 25-

---

[6] Even if were we to reach this issue, we likely would conclude that Kerr knowingly and intelligently waived his right to counsel before trial. *See Faretta v. California*, 422 U.S. 806, 835 (1975) (holding that a defendant who seeks to represent himself "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open" (internal quotation marks omitted)). The record reflects that over the course of the pretrial proceedings, during which he repeatedly and emphatically demanded to represent himself, Kerr: (1) confirmed that he understood the nature of the charges and the potential penalties he faced, *see* Special App'x at 28; and (2) acknowledged the importance of having the assistance of an attorney, *see id.* at 55-56. In addition, the district court warned Kerr immediately before trial about the dangers and difficulties of proceeding *pro se*. *See* Appellant App'x at 80, 84-86. Thus, while the district court's *Faretta* colloquy in this case was not ideal, it was not so deficient as to make Kerr's waiver of his Sixth Amendment right unknowing. *See, e.g.*, *Torres v. United States*, 140 F.3d 392, 401 (2d Cir. 1998) (explaining that "there is no talismanic procedure to determine a valid waiver" and that "[w]e need not analyze the district court's every word, so long as the record as a whole demonstrates that the defendant knowingly and intelligently waived her right to counsel"); *United States v. Hurtado*, 47 F.3d 577, 583 (2d Cir. 1995) (finding a *Faretta* examination "adequate" where the district court warned the defendant "of the specific perils of representing himself and the advantages of having legal representation," the defendant was "clearly aware of the penalties he faced if convicted," and the defendant "clearly stated that he would prefer to proceed *pro se*").

18

28. Alternatively, he argues that if the court upped Wells to full counsel for the remainder of the proceeding, then it should have appointed new counsel to assist Kerr with his motion to withdraw his plea because of Wells's "actual conflict" with respect to that motion. *See id.* at 28-41.

We note that the district court did not state explicitly that Wells returned to standby status following the entry of the plea. Despite any possible confusion, several reasons support our conclusion that the district court elevated Wells to full counsel only for purposes of the plea, and that Kerr thereafter resumed his self-representation.

Although the district court told Kerr at the plea hearing that it was "going to at this point accept the fact that Mr. Wells is your attorney," Appellant App'x at 98, it implied after accepting the plea that participation in an on-going relationship was optional, informing Kerr that the Probation Department would interview him and that "Wells can be there if you like, that's up to you *and him*," *id.* at 117 (emphasis added). The district court's observation that Wells was entitled to opt out of accompanying Kerr for such an interview, rather than having an obligation to attend, was a clear indication that the court viewed Wells, subsequent to the entry of Kerr's guilty plea, as having completed his service as counsel and returned to the status of standby counsel. *See, e.g., Gonzalez v. United* States, 722 F.3d 118, 134-35 (2d Cir. 2013) (noting, among the ways in which Gonzales's attorney's "performance was deficient with regard to sentencing," that counsel "did not accompany Gonzalez when Gonzalez was interviewed by the Probation Department"). In addition, there is no indication that Kerr waived his right to self-representation during the post-plea period because during that time he made numerous *pro se* filings, refused to allow Wells to speak on

19

his behalf at sentencing, and submitted a post-judgment letter reiterating that Wells was "standby counsel." *Cf. United States v. Barnes*, 693 F.3d 261, 271 (2d Cir. 2012) (noting that "even after the right to proceed *pro se* has been clearly and unequivocally asserted, the right may be waived through conduct indicating that one is vacillating on the issue or has abandoned one's request altogether" (internal quotation marks omitted)). The district court also made clear its view that Kerr continued to represent himself by accepting and ruling on his numerous *pro se* submissions. Tellingly, some of these filings requested the assignment of new counsel, which the court denied without stating or otherwise indicating that Wells remained Kerr's attorney. Finally, although Wells submitted a sentencing memorandum and appeared with Kerr at sentencing, it is routine, and certainly not unusual, for standby counsel to perform such essential tasks. *See, e.g.*, *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997) (standby counsel not elevated to full counsel when he "examined and cross-examined witness, and gave the defense summation"). We therefore conclude that Kerr continued representing himself after the entry of his plea and address only the first of Kerr's alternative Sixth Amendment arguments—that the district court deprived him of his right to counsel when it did not appoint an attorney to assist him with his second motion to withdraw his plea.

This inquiry is complicated by the fact that Kerr's post-plea request for counsel came after he waived his right to counsel before trial. While it is undisputed that the Sixth Amendment protects a criminal defendant's right to the assistance of counsel "'at all critical stages of the criminal process,'" *Marshall v. Rodgers*, __ U.S. __, 133 S. Ct. 1446, 1449 (2013) (quoting *Iowa v. Tovar*, 541 U.S. 77, 80-81 (2004)), it is also well settled "that a defendant . . .

20

has the right to 'proceed *without* counsel when he voluntarily and intelligently elects to do so,'" *Marshall*, 133 S. Ct. at 1449 (quoting *Faretta*, 422 U.S. at 807); *see also Forbes v. United States*, 574 F.3d 101, 106 (2d Cir. 2009) ("A motion to withdraw a guilty plea is a critical stage of a criminal proceeding . . . ."); *see generally United States v. Davis*, 239 F.3d 283, 287 (2d Cir. 2001) (a defendant who wishes to withdraw his plea of guilty "may waive his . . . right to counsel . . . and proceed *pro se*"). To resolve the tension that can exist between these two principles when a defendant who elected to proceed *pro se* later demands an attorney, there is broad consensus that, once waived, the right to counsel is no longer unqualified. *See United States v. Thompson*, 587 F.3d 1165, 1175 (9th Cir. 2009); *United States v. Leveto*, 540 F.3d 200, 207 (3d Cir. 2008); *United States v. Proctor*, 166 F.3d 396, 403 & n.8 (1st Cir. 1999); *United States v. Reddeck*, 22 F.3d 1504, 1510-11 (10th Cir. 1994); *United States v. Taylor*, 933 F.2d 307, 311 (5th Cir. 1991); *United States v. West*, 877 F.2d 281, 286 (4th Cir. 1989); *United States v. Solina*, 733 F.2d 1208, 1211-12 (7th Cir. 1984); *see also United States v. Brasch*, 205 F.3d 1325 (2d Cir. 1999) (table) (unpublished decision).

Although we have not definitively spoken on this precise issue, we have held that a defendant's right to represent himself in the first place is not absolute. *See Barnes*, 693 F.3d at 271-72. Among other qualifications placed on the exercise of that right, we have required that the request to proceed *pro se* be "'unambiguous and unequivocal'" so as to "'inhibit[] any deliberate plot to manipulate the court by alternatively requesting, then waiving counsel.'" *Id.* at 271 (quoting *Williams v. Bartlett*, 44 F.3d 95, 100-01 (2d Cir. 1994)). In addition, the request may be denied if the district court finds it to be "obstructionist" or "manipulative or abusive in some other way." *Id.* (internal quotation marks omitted). These concerns are

21

equally applicable to a situation in which a defendant, having invoked his right to proceed *pro se*, later seeks the reappointment of counsel. Accordingly, we hold, in agreement with our sister Circuits that have considered the issue, that once a defendant voluntarily and intelligently waives his right to counsel and elects to proceed *pro se*, the decision whether to grant or deny his "post-waiver request for counsel is well within the discretion of the district court." *Leveto*, 540 F.3d at 207 (citing cases).

Given the critical role that access to professional legal representation plays in our criminal justice system, a district court's discretion to deny post-waiver requests for counsel is necessarily circumscribed. Thus, it is manifestly improper for a court to deny such a request on purely punitive grounds. *See Menefield v. Borg*, 881 F.2d 696, 700 (9th Cir. 1989) ("We are certainly unwilling to deny counsel because of some conception that the defendant's initial decision to exercise his *Faretta* right and represent himself at trial is a choice cast in stone."); *see also Taylor*, 933 F.2d at 311 (defendant must ordinarily be allowed to "change his mind about whether he will represent himself"). In addition, a district court's denial of such a request made after trial or before any meaningful trial proceedings have begun may be subject to more searching scrutiny than the denial of a request made on the eve (or in the midst) of trial, when assigning new counsel would inevitably disrupt the court's schedule and impede the orderly administration of justice. *See Leveto*, 540 F.3d at 207; *Proctor*, 166 F.3d at 402; *Solina*, 733 F.2d at 1211-12; *Menefield*, 881 F.2d at 700-01. On the other hand, a motion to withdraw a mid-trial plea of guilty—and to have a new trial—where the defendant has elected to plead guilty after hearing the government's evidence, also portends inefficiencies, to wit, duplications of effort on the part of the prosecution, the judge, and the

22

witnesses, and the need for a second set of citizens to serve as jurors. *See, e.g.*, *United States v. Schmidt*, 373 F.3d 100, 102-03 (2d Cir. 2004).

A district court "need not countenance abuse of the right to counsel or the right to waive it," *Taylor*, 933 F.2d at 311, and it is well within the court's discretion to deny a post-waiver motion for new counsel when it is made in an effort to delay or disrupt the proceedings, *see id.* ("A defendant is not entitled to choreograph special appearances by counsel or repeatedly . . . alternate his position on counsel in order to delay his trial or otherwise obstruct the orderly administration of justice." (internal quotation marks and citation omitted)); *Leveto*, 540 F.3d at 207 (same); *Proctor*, 166 F.3d at 402 (same). Although we will generally require a district court faced with a post-waiver motion for new counsel to inquire into the defendant's reasons for the request and fully explain on the record the grounds for its ultimate decision, we will "not insist upon a formal inquiry or colloquy where the rationales for the request and decision are clearly apparent on the record." *Leveto*, 540 F.3d at 208.

With these principles in mind, we turn to the facts of Kerr's case and find that the district court, having properly denied Kerr's first *pro se* motion to withdraw his plea, did not abuse its discretion when it refused his post-waiver request for new counsel to help him file a second.[7] Acting *pro se*, Kerr filed his first motion to withdraw his plea days after it was entered, asserting only that he wanted "the jury [to] find [him] guilty or not guilty."

---

[7] As noted above, Kerr does not challenge on appeal the validity of his initial pretrial waiver of his right to counsel. We therefore assume for purposes of this analysis that it was knowingly and voluntarily made.

Appellant App'x at 173. As the district court correctly determined in its April 26, 2010 order

denying the motion, this does not constitute a valid ground for withdrawal. *See* Fed. R.

Crim. P. 11(d)(2)(B) (defendant may withdraw his plea before sentencing if he "can show a

fair and just reason"); *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992)

(defendant's "change of heart" not a "sufficient reason to permit withdrawal of a plea"). In

addition, a careful review of the plea colloquy clearly indicates that the district court

complied with the requirements of Rule 11 and fully ensured that Kerr's plea was knowing,

voluntary, and supported by a factual basis. *See* Fed. R. Crim. P. 11(b). The district court

therefore properly denied Kerr's first withdrawal motion. *See Gonzalez*, 970 F.2d at 1100.

Thus, when, in mid-May 2010, Kerr filed his post-waiver motion for the appointment

of new counsel, the district court was confronted with the following facts: (1) Kerr

effectively fired three attorneys before electing to proceed *pro se* at trial with a fourth as

standby counsel; (2) he pled guilty with the assistance of counsel midway through trial and

then resumed acting as his own attorney days later when he filed his first meritless *pro se*

motion to withdraw his plea; and (3) less than one month after the denial of that motion,

Kerr moved for the appointment of a fifth attorney to assist him with a second motion to

withdraw his plea. Considering these facts, we have little trouble concluding that the district

court acted within its discretion when it denied the request. While a first motion to

withdraw a plea is a "critical stage of the proceeding," *see Forbes*, 574 F.3d at 106, successive

motions in the form presented here, seeking the same relief yet articulating no specific

factual details which would support that relief, do not rise to that level. A defendant has no

right to whipsaw the district court and delay the proceedings by continually alternating his

24

position on counsel, especially when his post-waiver request for counsel arises in connection with a motion the court has already denied. *See Taylor*, 933 F.2d at 311; *cf. Barnes*, 693 F.3d at 271. Moreover, although it would have been preferable for the district court to explain its reasons for denying the request, *see Leveto*, 540 F.3d at 207-08, we find no abuse of discretion in this instance because the reasons for the court's decision—Kerr's alternating positions with respect to representation and his attempt to delay the proceedings—are "clearly apparent on the record," *id.* at 208.

## III. Sentencing Issues

Kerr challenges the procedural reasonableness of his sentence on three grounds, arguing that the district court: (1) improperly held him accountable for the combined weight of all 7,000 MDMA pills because he did not know about the 3,000 pills hidden in his vehicle's rear interior paneling; (2) failed to find him eligible for a two-level minor role adjustment pursuant to U.S.S.G. § 3B1.2; and (3) did not articulate an adequate basis for its sentence. We review sentences for procedural and substantive reasonableness using a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). Procedural error occurs when, for example, the district court improperly calculates the applicable Guidelines range, fails to consider the sentencing factors articulated in 18 U.S.C. § 3553(a), or neglects to explain the reasons for its chosen sentence. *See United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc).

Contrary to Kerr's first argument, the district court was not required to find that he "knowingly" possessed all 7,000 MDMA pills before holding him accountable for them all. We rejected an identical challenge in *United States v. de Velasquez*, where a defendant

convicted of the importation of heroin argued that because she had been unaware of the heroin secreted in her shoes, she could not be held accountable for that amount. 28 F.3d 2, 4-6 (2d Cir. 1994). As we stated in that case, "[t]here is no requirement under the Guidelines that the defendant know or foresee the total quantity of drugs in his possession to be sentenced for the full amount." *Id.* at 5; *see also* U.S.S.G. § 1B1.3 cmt. n.2 (2010) (explaining that "the defendant is accountable for all quantities of contraband with which he was directly involved" and that the reasonable foreseeability requirement "does not apply to conduct that the defendant personally undertakes").

Kerr next argues that he was entitled to a minor role adjustment because he "was no more than a onetime drug mule." Appellant Br. at 56. "To the extent that [a defendant] claims that one who is simply a courier is automatically entitled to a [U.S.S.G.] § 3B1.2 minor role adjustment based on that status, we reject his argument." *United States v. Garcia*, 920 F.2d 153, 155 (2d Cir. 1990) (per curiam). Instead, it was Kerr's burden to establish that his conduct was minor "as compared to the average participant" in the crime of conviction. *United States v. Rahman*, 189 F.3d 88, 159 (2d Cir. 1999); *see also Garcia*, 920 F.2d at 156 ("It is the defendant's burden to establish by a preponderance of the evidence that his level of culpability entitles him to a minor role reduction."). This inquiry is highly fact-intensive and, in cases involving drug couriers, necessarily depends on "such factors as the nature of the defendant's relationship to other participants, the importance of the defendant's actions to the success of the venture, and the defendant's awareness of the nature and scope of the criminal enterprise." *Garcia*, 920 F.2d at 155. We have no difficulty concluding that Kerr

did not meet this burden as he failed to present any evidence or arguments addressing these factors.

Finally, Kerr maintains that the district court rejected his sentencing arguments without adequate explanation. As we have repeatedly reiterated, "we never have required a District Court to make specific responses to points argued by counsel in connection with sentencing." *United States v. Bonilla*, 618 F.3d 102, 111 (2d Cir. 2010). Instead, the court is required to "satisfy us only that it has considered the party's arguments and has articulated a reasonable basis for exercising its decision-making authority." *Id.* (citing *Cavera*, 550 F.3d at 193). Here, the district court did just that: it "reviewed and considered all the pertinent information including . . . submissions by counsel," Appellant App'x at 143-44, and explained that it found "a sentence at the low end of the Guidelines range . . . fair, just, and sufficient but not greater than that which is necessary to comply with the goals of sentencing," *id.* at 145. We also note that the district court made clear its desire to further consider and likely credit Kerr's sentencing arguments, but stated that Kerr's refusal to meet with the Probation Department deprived it of the necessary information to do so. Kerr's sentence was procedurally sound.

## IV.   *Pro Se* Brief

Kerr argues in his *pro se* brief that the district court improperly denied his motion to withdraw his guilty plea and challenges various aspects of his prosecution and trial. *See Pro Se* Br. at 9-20. As we concluded above, Kerr's guilty plea was knowing and voluntary, and the district court did not abuse its discretion when it denied his motion to withdraw it. Kerr's remaining *pro se* arguments—concerning alleged prosecutorial misconduct, discovery

improprieties, the denial of his motion to dismiss the indictment, and various trial errors—are therefore barred by his valid guilty plea. *See United States v. Lasaga*, 328 F.3d 61, 63 (2d Cir. 2003) ("A defendant who pleads guilty unconditionally admits all elements of the formal charge and, in the absence of court-approved reservation of issues for appeal, waives all challenges to prosecution except those going to the court's jurisdiction.").

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court.